*In re* KLINK'S ESTATE.

OLLENBROOK *v.* BERTLING.

1. WILLS—UNDUE INFLUENCE—EVIDENCE—INFERENCES.
    While undue influence may be established by indirect and circumstantial evidence, it must be of such a nature that the inference may fairly be. drawn therefrom that such influence was in fact exercised.

Ante-testamentary declarations as evidence of undue influence, see note in 3 L. R. A. (N. S.) 749.

2. SAME.

Trouble between contestant and her mother over a house and a piano, which induced the mother to leave the bulk of her property to her other children, would not constitute undue influence; neither would unkind words said about contestant to the mother by her other daughters, since the influence exerted, to be deemed "undue," must be such as amounts to moral or physical coercion, so that testatrix was prevented from exercising her own judgment and free will, and her act became, in effect, that of another.

3. APPEAL AND ERROR—WEIGHT OF EVIDENCE—NEW TRIAL—DUTY OF APPELLATE COURT.

When it is apparent from the record that, notwithstanding every reasonable presumption in support of the decision of the trial judge, he erred in refusing to set aside the verdict on the ground that it was against the weight of the testimony, the duty of this court to overrule that decision is manifest.

4. WILLS—EVIDENCE—WEIGHT OF EVIDENCE.

Verdict in a will contest case in favor of contestant on the ground of undue influence, *held*, clearly against the weight of the evidence.

5. SAME—WITNESSES—CROSS-EXAMINATION.

*Held*, that there was no abuse of discretion in allowing much latitude in the cross-examination of proponents, who were beneficiaries under the will.

6. COSTS—ALLOWANCE FOR RECORD AND BRIEF—FAILURE TO SUM-MARIZE.

Although proponents are entitled to costs, where very little of the testimony was summarized, and the greater part of the brief was made up of quotations of testimony from the record, the allowance for printing the record will be limited to 250 pages, and that for the brief to 100 pages.

7. APPEAL AND ERROR—CRITICISM OF JUDGE IN BRIEF CAUSE FOR STRIKING.

Uncalled for criticism of the trial judge in the brief of counsel must be met with condemnation, being sufficient cause to strike the same from the files.

8. JUDGES—INTEGRITY—PRESUMPTIONS.

While judicial officers are human and make mistakes, the presumption of their integrity must be accepted by all counsel.

Error to Wayne; Tappan (Harvey J.), J., presiding. Submitted April 23, 1920. (Docket No. 44.) Decided June 7, 1920.

Orrin S. Breen and William Bohrer, executors, presented the last will of Anna Klink, deceased. The will was allowed in the probate court, and Louisa Ollenbrook appealed to the circuit court. Judgment for contestant. Proponents bring error. Reversed

*James H. Pound,* for appellants.

*Joseph A. Moynihan,* for appellee.

SHARPE, J. Anna Klink died in Detroit on May 12, 1916. The proponents presented for probate a writing, dated July 31, 1914, purporting to be her last will and testament. It was allowed and an appeal taken to the circuit court for Wayne county. The contestant claimed that the deceased was mentally incompetent to make a will and that undue influence was exercised by the proponents to secure its execution. The trial judge held as a matter of law that there was no sufficient proof of mental incompetency, and so instructed the jury. He submitted the question of undue influence, and they found against the will. A motion for a new trial was made and denied. One of the reasons assigned therefor was that the verdict was against the great weight of the evidence.

The record is voluminous, consisting of more than 400 printed pages. We have read it with care. The neglect of counsel to discuss the assignments relied on separately and to point out the pages in the printed record to which allusion is particularly made has greatly increased the task of giving consideration to the 73 errors assigned. These cannot all be reviewed in an opinion of reasonable length. We can but state the conclusions reached.

The testatrix was a widow 67 years of age. She had been married four times. At the time of her death, she had five living children. In the will she made several specific bequests to grandchildren. She therein stated that she had made full advancement to her daughter, Emma Footitt, of her share of her estate. She bequeathed to her daughter, Louisa Ollenbrook, the contestant, $5. The residue of the estate was bequeathed to her three children, Mary Bertling, Alice Breen and William Bohrer, share and share alike.

It appears that her relations with the contestant had been strained for many years. The latter spent several months in the House of the Good Shepherd when a girl of 14. She and her sisters did not get on well together. It is her claim that in the later years of her mother's life their relations had been friendly until a dispute arose over the repairing of a house of her mother's she was then occupying. The date of this is not fixed in the record. There was afterwards trouble over a piano which she claimed her mother had given her and which the latter sought to reclaim. A replevin suit followed, resulting in favor of the contestant.

The will in question was drawn by Henry C. L. Forler, an attorney of Detroit. While both Mrs. Breen and Mrs. Bertling were present, both deny that they talked with their mother about it. Contestant soon after learned that a will had been made and of its contents. She was asked:

"*Q.* Didn't you go out and say, mother, how does it come you only gave me $5.00?

"*A.* I would not dare; she would telephone the rest of them to come down."

On August 2, 1914, deceased caused to be published in the Detroit Tribune the following notice:

"From now on I disown Louisa Ollenbrook as a daughter and to have no claims whatsoever hereafter.
                                        "ANNA KLINK."

1. Undue influence. In the recent case of *Phelps* v. *Beard*, 209 Mich. 266, at page 274, this court said:

"While undue influence may be established by indirect and circumstantial evidence, it must be of such a nature that the inference may fairly be drawn therefrom that such influence was in fact exercised."

We also therein called attention to the opinion in *Re Williams' Estate*, 185 Mich. 97, where the authorities are collected and exhaustively discussed.

That the making of the will was induced by the troubles over the house and piano may, perhaps, be inferred. The testatrix may have been so angered at what she believed to be the unjust conduct of her daughter that she therefore concluded not to leave her any considerable amount of property. But such fact, if conceded, does not in itself constitute undue influence. Neither would unkind words said about contestant to the deceased by her other daughters. The influence exerted, to be deemed "undue," must be such as amounts to moral or physical coercion, so that the testatrix was prevented from exercising her own judgment and free will, and her act became, in effect, that of another. These controlling principles were stated to the jury in the instructions of the court. When applied to the testimony tending to support the claim of contestant, there is little, indeed, from which any fair inference of undue influence can be drawn.

We are always loath to disturb the verdict of a jury when any competent evidence has been submitted on which it can be founded. But the right of the proponents to have this question reviewed was reserved to them by their motion for a new trial, and we cannot evade the necessity for its determination.

The rules by which this court should be governed

in considering this question are well stated in *Hintz*
v. *Railroad Co.*, 132 Mich. 305. It is therein said:

"We are also bound to bring to the support of the
decision of the trial judge all reasonable presumptions
which arise from his superior opportunity to deter-
mine the credibility of witnesses. When, however, in
accordance with these principles, it is apparent from
the record, notwithstanding every reasonable pre-
sumption in support of his decision, that the trial
judge erred in refusing to set aside the verdict on
the ground that it is against the weight of the testi-
mony, the duty of this court to overrule that decision
is manifest. *Whipple* v. *Railroad Co.*, 130 Mich. 460;
*Baldwin* v. *Railway Co.*, 128 Mich. 417; *Cole* v. *Rail-
way*, 132 Mich. 122."

See, also, *Krouse* v. *Railway*, 166 Mich. 147.

The testimony bearing on this charge cannot well
be reviewed. There is no direct evidence tending to
support it. It is founded on statements and acts of
the testatrix and the beneficiaries under the will from
which such influence is sought to be inferred. These,
in our opinion, have little probative force. Besides,
we find so much in the record tending to show that
testatrix fully understood what she was doing and
felt justified, in consequence of the conduct of contest-
ant, in making her will as she did, that we feel con-
strained to hold the verdict was so clearly against the
weight of the evidence that a new trial should have
been granted.

2. Many pages in the brief of counsel for proponents
are devoted to the exclusion of an unsigned letter
claimed to have been sent by contestant to the de-
ceased. We do not find that this letter was offered
after proof had been submitted which rendered it
competent.

3. Much latitude was allowed contestant's counsel
on the cross-examination of the proponents, who were
beneficiaries under the will. We find no abuse of dis-

cretion in this respect on the part of the trial court. The proofs tending to support a charge of undue influence usually consist of facts and circumstances from which it may be inferred.

The other errors assigned have been considered. They are not likely to arise on a new trial.

Proponents are entitled to costs. We feel, however, that the allowance for printing the record should be limited to 250 pages and that for printing the brief to 100 pages. Very little of the testimony is summarized and the greater part of the brief is made up of quotations of testimony from the record.

In the brief filed by counsel for the proponents, language is employed to which we must refer. Criticism of the trial judge, entirely uncalled for, is indulged in. Had our attention been called to such statements before the hearing, the brief would doubtless have been stricken from the files. The long experience of counsel as a practitioner should cause him to appreciate that such a course cannot be tolerated. While judicial officers are human and make mistakes, the presumption of their integrity must be accepted by all counsel. The Constitution and laws provide a method by which an attack may be made upon them, which they may have an opportunity to meet. Any other course pursued, tending to belittle them and detract from the dignity attached to the office, must be met with condemnation.

The verdict and judgment will be set aside, and a new trial granted.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD. JJ., concurred.