*In re* KENNEY'S ESTATE.

MANNING *v.* KAMMAN.

1. WILLS—UNDUE INFLUENCE—OPPORTUNITY ALONE INSUFFICIENT.
   Proof of circumstances affording opportunity to exercise undue influence, standing alone, is insufficient to establish undue influence.

2. SAME—LIVING IN HOME WITH CHILD.
   That testatrix lived in home of one of her children and had been cared for by said child is not proof that testamentary gifts to said child resulted from undue influence.

3. SAME.
   That while testatrix was in hospital "no admittance" sign was placed on her door by doctor's orders does not tend to establish that will resulted from undue influence of some of children.

4. SAME.
   In proceedings contesting will, proof of undue influence, *held,* to be lacking.

As to presumption of undue influence from unnatural testamentary disposition of property, see annotation in 6 L. R. A. (N. S.) 202; 22 L. R. A. (N. S.) 1024.

Error to Wayne; Moynihan (Joseph A.), J. Submitted January 23, 1930. (Docket No. 116, Calendar No. 34,461.) Decided April 7, 1930. Rehearing denied June 27, 1930.

John P. Kenney presented for probate the last will of Catherine Kenney, deceased. Catherine Kamman and others filed objections, and the will was certified to the circuit court. From a judgment *non obstante veredicto* for proponents, contestants bring error. Affirmed.

*O'Brien & August,* for plaintiffs.

*Edward N. Barnard,* for defendants.

NORTH, J. At the age of 85 years, Mrs. Catherine Kenney died on December 5, 1924, in Providence Hospital, Detroit, Michigan. Her husband had passed away some years before. She was the mother of ten children. Three of her sons and five daughters, all mature persons, survived her. Her will, made February 23, 1923, upon notice of contest being filed in the probate court of Wayne county, was certified to the circuit court. It was contested by four of the children on the grounds of undue influence and mental incompetency. The jury found against the will; but on motion of proponents, a judgment *non obstante* sustaining the will was entered. Complaining thereof, the contestants review by writ of error; but in this court the claim of mental incompetency has been abandoned.

Concerning the four contestants, the will provides:

"Second: I give and bequeath to each of my four children, Catherine Kamman, Lille Chevillot, Charles J. Kenney and Frank M. Kenney, the sum of five dollars. I do not give them more for the reason that they have recently treated me very badly in asking the court to appoint a guardian for me."

To the two children of her deceased son, Maurice, she gave $500 each; to each of two other grandchildren $200; to the pastor of her church $200; and the balance of her estate to the four children who are here as proponents in the following proportion: Two-ninths each to John P. Kenney, Maria Monahan, and Anna K. Lenfesty, and the remaining three-ninths to Margaret H. Manning. The estate, amounting to $60,000 or more, consisted largely of real property which came to Mrs. Kenney by will from her deceased husband; though she had inherited one parcel from a deceased son. In her earlier years, Mrs. Kenney had aided in supporting their rather large family by taking in washings. With the exception of the daughter Margaret, it is said that all the children were taken from school and set at work at a rather early age. Margaret had a more liberal education, seems to have married well, and during the last 12 years of her mother's life lived in the same household with her mother; at first in the mother's home, but the last eight or nine years of this period in the home of Mrs. Manning.

In 1920, Mrs. Kenney made a will by which she gave to each child a substantial share in her estate. In August, 1922, she became seriously ill from diabetes and gangrene. She was removed to Providence Hospital in Detroit and an operation performed on one of her feet because of the gangrenous condition. Some time prior to this, unfriendly relations had developed between the contestants and Mr. and Mrs. Manning in consequence of which the contestants were forbidden to visit their mother at the Manning home. The cause of this family estrangement is not made clear by the record. Following the operation, Mrs. Kenney was seriously ill. One of the contestants described his mother as then being "in a feeble condition.    *    *    *    Awfully

sick.'' The doctor in charge at the hospital ordered
a ''no admittance'' sign placed on the door of Mrs.
Kenney's room. This sign seems to have been more
or less disregarded by both the proponents and con-
testants; but the latter insist the regulations were
more rigidly enforced against them than against the
proponents. This situation at the hospital continued
until the latter part of February or the first of
March, 1923. Soon after Mrs. Kenney entered the
hospital an application for the appointment of a
guardian ''of all her affairs'' was filed by Frank K.
Kenney, and apparently with the approval and co-
operation of the other contestants. Notice to appear
in court in this proceeding was served on Mrs.
Catherine Kenney, and there is testimony that she
was much disturbed thereby. It is to this applica-
tion for the appointment of a guardian that refer-
ence is made in the second paragraph of the will
above quoted. Some months later these proceedings
were abandoned. As a matter of fact a power of
attorney to transact her current affairs was given
by Mrs. Kenney to a trust company about the time
the petition for the guardian was filed. On Febru-
ary 22, 1923, at the request of Mr. Manning, a repu-
table member of the Wayne county bar called upon
Mrs. Kenney at the hospital and consulted with her
relative to the preparation of the present will; and
the following day the will prepared by the attorney
was presented to and executed by the testatrix. She
could neither read nor write, and her signature was
affixed by making her cross. Concerning the making
of this will, the undisputed testimony of the attor-
ney is that on the first day he spent substantially
an hour and a half learning from Mrs. Kenney what
testamentary disposition she desired to make of her
property; that she informed him what property she
had; conversed with him concerning her children,

naming them; that she gave her reason for practically disinheriting the contestants; that "her memory seemed  *  *  *  to be good;" and in his opinion she was then competent to make the will. None of the members of testatrix's family were present on either occasion. After making this will, Mrs. Kenney continued to remain at the hospital until her death, a year and nine months later. In the meantime she was visited by both the proponents and contestants. The latter claim they were not advised by their mother or otherwise during her lifetime of the will of February 23, 1923.

Many other details of more or less importance appear in the record. The contestants assert that the established circumstances taken as a whole afford some proof of undue influence; and that therefore the. trial judge was in error in entering a judgment *non obstante veredicto*. The issue is thus stated in one of contestant's briefs:

"The question now before this court is whether undue influence may reasonably be inferred from all the facts and circumstances appearing from contestants' testimony, such testimony to be considered as true with all reasonable inferences to be drawn therefrom."

Contestants stress the contention that the conduct of the Mannings in not permitting them to see their mother before she was taken to the hospital, the "no admittance" sign placed on her door while at the hospital prior to the making of this will, and the subsequent secrecy concerning the will itself, and other incidents revealed by the record, constitute circumstances tending to establish undue influence. We have carefully read and considered this record, and are convinced that contestants' contention cannot be sustained. At most, the circumstances relied upon afford only opportunity to exercise undue in-

fluence. That is not sufficient. *In re Carlson's Estate,* 218 Mich. 262; and *In re Bulthuis' Estate,* 232 Mich. 129. In the latter case we said:

"It is true such influence is not usually exercised openly and may be inferred from the facts and circumstances surrounding the testator, including opportunity for the beneficiary to exercise it. But there must be more than mere opportunity, unequal distribution of property or previous statement by the testator as to intended disposition of his estate from which the will departs, to constitute undue influence."

We know of no legal requirement or prevailing custom by reason of which a testator or the beneficiaries must publish the making of a will to save it from the suspicion of undue influence. The fact that a testator has lived in the home of one of his children, and has been cared for by that child, is not proof that testamentary gifts to such faithful offspring result from undue influence. *In re Shuler's Estate,* 242 Mich. 576. Nor, in our judgment, under the circumstances here involved, does the "no admittance" sign incident tend to establish contestants' claim of undue influence. *In re Cochrane's Estate,* 211 Mich. 370. The regrettable course of conduct in which the members of this family have indulged is too commonly characteristic of family feuds. But in this record the proof is lacking from which it can be determined how or by whom, if at all, in the making of this will Mrs. Kenney was subjected to undue influence as that term has been defined by this court. *In re Curtis' Estate,* 197 Mich. 473; *In re Klink's Estate,* 210 Mich. 614. The judgment entered is affirmed.

WIEST, C. J., and BUTZEL, CLARK, POTTER, SHARPE, and FEAD, JJ., concurred. McDONALD, J., did not sit.