460 P.2d 632

**In the Matter of the ESTATE of Dante Emil ACCOMAZZO, Deceased.**

**Elaine Accomazzo MILLER, Appellant and Cross-Appellee,**

v.

**WESTERN FARMS INV. CO. et al., Appellee and Cross-Appellant.**

**No. 9665.**

Supreme Court of Arizona.

In Division.

Nov. 6, 1969.

Rehearing Denied Dec. 9, 1969.

Pain & Julian, Phoenix, for appellant and cross-appellee.

Elmer C. Coker, Phoenix, for respondents, Western Farms.

Abbott H. Goldenkoff, Phoenix, for respondents-appellees.

UDALL, Chief Justice:

This is an appeal from a summary judgment entered by the Superior Court, dismissing the contestant's complaint in a will contest case. Decedent was married three times. His first marriage produced two boys, and a girl whose married name is Eda Smith. His second marriage was to a divorcee named Dollie Wendling. Her husband, Bud, worked on the deceased's farm, and Dollie did laundry work there. Dollie and Bud separated in October, 1944, and were divorced on Dec. 8, 1944. From then on she and the decedent had sexual relations. In January, 1945, he brought Dollie to live with him on his farm as man and wife. Shortly thereafter, she found that she was pregnant, and Dante, then 57, married her on March 24, 1945. She was then 30 years of age. On May 2, 1945 she sued him for divorce. On September 26, 1945 she gave birth to a daughter, Elaine, whose birth certificate attests to the fact that her father was Dante Accomazzo.

On February 9, 1946 Dollie's divorce was granted and she was given custody of Elaine, and child support. In August 1947 Dollie and Dante remarried, at which time they entered into a prenuptial agreement which referred to "the daughter of said parties, Elaine Accomazzo."

In May 1950 they were again divorced at which time they entered into a property settlement agreement in which it was stated that it was "understood and agreed that the parties hereto are the parents of a child, Elaine Accomazzo, born September 26, 1945."

**138**

Despite these overt admissions of paternity, decedent had some doubts about whether he was really Elaine's father. Elaine claims that his doubts were nurtured by insidious suggestions planted in his mind by Eda Smith, who, it is alleged, constantly and falsely told him that Dollie married him only for his money, that she was running around with other men, and that he was not really Elaine's father, but was in fact the victim of Dollie's feminine wiles.

Elaine's contest of Dante's will is based upon lack of testamentary capacity, undue influence by Eda Smith, and his delusion that Elaine was not actually his daughter.

Dante is known to have made three wills. The first, in 1955 left $5 "to Elaine Accomazzo"; the second, in 1959, left $5 "to Elaine Accomazzo"; the third, in 1964 raised the $5 bequest to $100 but did so in the following language:

"I remember with affection my *foster* daughter Elaine Accomazzo, Miller, a resident of Phoenix, Arizona, for whom I provided during her minority until her marriage, and I give and bequeath unto her the sum of one hundred dollars cash." [Italics ours.]

The wills were made by his attorney, out of the presence of Eda Smith.

A great part of the answer to the contestant's complaint consists of denials of the allegations of the complaint. The record contains answers to interrogatories, depositions, affidavits, etc. Based on all of these, the proponent of the will moved for summary judgment on the ground that there was no genuine issue of material fact! Actually, the only issues framed are factual. Whether this testator had the mental capacity to make a will, whether he had been subjected to undue influence by Eda Smith, and whether the contestant was his illegitimate "foster" child or was really the child of Dollie's former husband, are all disputed questions of fact. Whether the proof contained in the record was sufficient to get contestant past a directed verdict, though a question of law, is not relevant to

a motion for summary judgment. The rule governing such motions is not designed to resolve factual issues but is for the purpose of ascertaining whether such issues exist. A trial judge sits in various capacities at different times. When he presides over a trial to a jury, his functions are to see that the trial is conducted properly, to rule on evidence, and to instruct the jury. These duties require him to interpret the law. When he hears a case without a jury, he not only interprets the law, but also sits for the purpose of finding the facts. When he hears a motion for a summary judgment he must not attempt to determine which facts are true and which are not. His sole function is to determine whether one or more material facts are in dispute.

In the instant case, the trial judge seems to have confused these different roles. He entered judgment against the contestant, and in his order he made findings of fact. He did not designate them as such, but instead, included in the order, the following language:

"It is therefore ordered, adjudged and decreed: that from the affidavits in support of said motion for summary judgment and objections thereto and the depositions on file herein that *the decedent at the time of the execution of said will bearing date of June 16, 1964, was of sound and disposing mind, and was not acting under undue influence exerted upon him by other persons.*" (Italics ours.)

The italicized portion of the order, quoted above, are findings of fact. They have no place in summary judgment proceedings. By stating that they are "ordered, adjudged and decreed" the court cannot change their nature from findings of fact, to rulings of law.

The following language from Boozer v. Arizona Country Club, 102 Ariz. 544, 434 P.2d 630 (1967), illustrates the rationale for considering the trial court's order in the instant case to be reversible error:

"A motion for summary judgment is granted erroneously if on an examination of the entire record it is found that any

disputed fact issue exists which could, if true, affect the final judgment."

\* \* \* \* \* \*

"Even in cases where the judge is of opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment."

The judgment of the trial court dismissing contestant's action, and the order of the probate court admitting the will to probate, are reversed, and the case is remanded for further proceedings consistent with this opinion.

STRUCKMEYER and HAYS, JJ., concur.