492 P.2d 460

In the Matter of the ESTATE of Dante Emil ACCOMAZZO, aka D. E. Accomazzo, Deceased.

Elaine Accomazzo MILLER, Appellant,

v.

WESTERN FARMS INVESTMENT COMPANY, an Arizona corporation, et al., Appellees.

No. I CA-CIV 1617.

Court of Appeals of Arizona, Division 1.

Jan. 17, 1972.

Rehearing Denied Feb. 17, 1972.

Review Denied March 28, 1972.

Pain & Julian by Fred J. Pain, Jr., Phoenix, for appellant.

Elmer C. Coker, Phoenix, for appellee Western Farms Investment Co.

Abbott H. Goldenkoff, Phoenix, for appellees Accomazzo and Smith.

HOWARD, Judge.

This is an appeal from an order admitting a will to probate. Appellant contested its admission to probate, challenging its validity on various grounds including that of undue influence. The issue of undue influence was submitted to the jury via interrogatory and it responded to the interrogatory in the affirmative.[1]

Appellees moved for judgment n.o.v. or, in the alternative, a new trial and the court granted the appellees' motion for judgment on the grounds that "viewing the evidence in a light most favorably to support the verdict of the jury, reasonable men could not under the evidence herein,

1. The Supreme Court of this state had previously reversed a summary judgment dismissing appellant's contest, holding that factual issues existed precluding summary judgment. *See* In re Estate of Accomazzo, 105 Ariz. 137, 460 P.2d 632 (1969).

find any undue influence at the time of the execution of the will in question, nor any evidence of acts or statements of any person made for the purpose of unduly influencing the testator in the preparation of his will."

Appellant's position was that she was a daughter of the decedent by his second wife; that her stepsister, appellee Eda Smith, his daughter by his first marriage, deliberately "campaigned, by slander and defamation" against her to make the decedent believe that he was not appellant's father; that his third wife, appellee Anna Della Accomazzo assisted her to this end; and that the subject will should be denied probate since it was the product of this conduct.

Viewing the evidence most favorable to appellant's position, we agree with the trial court that it did not suffice to support a finding of undue influence.

■ Initially we address ourselves to the controlling legal principles. The test on granting a motion for judgment n.o.v. is the same as that pertaining to the direction of the verdict during the course of trial—if there is any substantial evidence from which reasonable men could have found the ultimate facts to be such as to sustain the verdict, the motion should be denied. In re Thompson's Estate, 1 Ariz. App. 18, 398 P.2d 926 (1965). In the case of In re Estate of McCauley, 101 Ariz. 8, 415 P.2d 431 (1966), we find the following discussion of undue influence:

"The basic concept emerging from the mass of decisions on the subject of undue influence is that a person unduly influences a testator or testatrix in executing a will when that person through his power over the mind of the testator or testatrix makes the latter's desires conform to his own, thereby overmastering the volition of testator or testatrix. [citations omitted] Since undue influence is commonly exercised in secret, it may be established by circumstantial evidence. [citation omitted] Whether undue influence has been exerted to bring about

the making of a particular will is a question of fact. [citation omitted] The burden of proving that a will has been procured by undue influence is on the contestant. [citation omitted]" 101 Ariz. at 10, 415 P.2d at 433.

The court enumerated the following factors which it deemed significant in determining whether a will was a product of undue influence:

"Whether the alleged influencer has made fradulent representations to the testatrix; whether the execution of the will was the product of hasty action; whether the execution of the will was concealed from others; whether the person benefited by the will was active in securing its drafting and execution; whether the will as drawn was consistent or inconsistent with prior declarations and plannings of the testatrix; whether the will was reasonable rather than unnatural in view of the testatrix' circumstances, attitudes, and family; whether the testatrix was a person susceptible to undue influence; and whether the testatrix and the beneficiary have been in a confidential relationship." 101 Ariz. at 10–11, 415 P.2d at 433.

*See also* In re Estate of Frick, 13 Ariz. App. 247, 475 P.2d 732 (1970).

■ Our Supreme Court has also noted that in will contests, more frequently than in other actions, juries are likely to render verdicts upon insufficient evidence, thus requiring close scrutiny by a reviewing court when the sufficiency of the evidence is called into question. In re Walters' Estate, 77 Ariz. 122, 267 P.2d 896 (1954).

■ We have no quarrel with the proposition advanced by appellant that a will may be invalidated for undue influence under certain circumstances where a person makes false statements and accusations to a testator concerning the natural objects of his bounty. · 57 Am.Jur., Wills, § 362 (1948); 94 C.J.S. Wills § 228 (1956). Appellant contends that Eda Smith continually created in the mind of the testator the impression that appellant was not really his

daughter. The record does reflect that the testator and appellant's mother lived together as man and wife prior to marriage; that her mother's pregnancy was the impetus for their marriage on March 24, 1945. The testator was then fifty-seven and she was thirty. On May 2, 1945, she sued him for divorce and on September 26th she gave birth to a daughter, the appellant, whose birth certificate attests to the fact that her father was Dante Accomazzo.

On February 9, 1946, appellant's mother obtained a divorce and was given custody of appellant and child support. In August, 1947, the parties remarried and entered into a pre-nuptial agreement which referred to "the daughter of said parties, Elaine Accomazzo." They were divorced again in May, 1950, at which time they entered into a property settlement agreement wherein it was stated that it was "understood and agreed that the parties hereto are the parents of a child, Elaine Accomazzo, born September 26, 1945."

The record also reflects that the testator made three wills. A 1955 will left $5 "to Elaine Accomazzo"; a 1959 will left $5 "to Elaine Accomazzo"; and the subject will, executed in 1964, contained the following bequest:

> "I remember with affection my foster daughter ELAINE ACCOMAZZO MILLER, a resident of Phoenix, Arizona, for whom I provided during her minority until her marriage, and I give and bequeath unto her the sum of ONE HUNDRED DOLLARS cash."

At the trial, appellant testified:

"Q. I asked you whether you had any facts based on your own personal knowledge that Eda Smith had any undue influence upon her father when he made this will.

A. I had no facts, just my own personal feelings.

Q. It was just a feeling of yours, is that right?

A. Yes."

Appellant's mother testified that shortly after the 1945 marriage, Eda Smith and her husband visited with them. She stated that Eda told her father that "I was an Oklahoma woman and I was after his money and the baby wasn't his." She also testified that she and the testator started having problems when Eda moved back to Phoenix, Arizona:

"Q. Can you state what problems developed?

A. He would average to going up there about once a month or maybe every two months, and when he come back he would be raving mad, chewing on his shirt collar, telling me that she said I was after his money and the baby wasn't his, and I was an old Oklahoma woman and I shouldn't have married him. I don't know what all he would say. He just would be raving mad.

Q. What happened as a result of this?

A. Well I kept putting up with it for a while, and then I sued him for divorce again."

She testified also that, prior to the second divorce, there was a "big scene" with Eda:

"Q. What happened in this big scene? Would you state what was said between the parties?

A. She was calling me all kinds of dirty names, said that Elaine wasn't his, I was after his money, I was an old Oklahoma woman and I didn't have no business marrying him. I don't remember just what all she did say."

She testified that the testator was good to her and that the *only* time she heard Eda say anything to her father was on the first visit to her home. Her daughter by a prior marriage, contestant's half-sister, testified as to Eda's visit as follows:

"Q. Could you relate what occurred at that visit that you remember?

A. There was a quarrel. She had gotten a telephone call from—

Q. Who is she?

A. My mother. About a grocery order, and Eda thought that it was rude that she should talk on the phone while she was there, to another man.

Q. Do you remember a quarrel at this time?

A. Yes.

Q. Do you remember anything more about that?

A. No."

According to her, appellant's mother and the testator had several quarrels about Eda during a two to three year period. She stated:

"Q. What did you observe about Mr. Accomazzo during these quarrels?

A. Well, he would go to visit his daughter, and when he came home he would be very upset. When he would come in, he would be chewing on his shirt collar pacing the floor, saying that Eda said that my mother was seeing another man, and my mother would say, 'who?' and he would say Bud Wendling [former husband of appellant's mother] and she said, 'I see him only when he comes to pick up his daughter for his visit.' Then I would leave the house. I was so confused because she would say—Eda would say that Elaine was not his child, and yet he always—there was never any indication that she wasn't.

Q. Do you remember hearing what Dolline [appellant's mother] would say?

A. She said, 'who would know better than you?'

Q. As you say, there were several of these types of quarrels? What was Mr. Accomazzo's composure? Do you recall this composure during this time?

A. He would be very upset."

Appellant also testified that when she was about twelve or thirteen, she and the testator visited with each other away from his home because "he said that his wife was very jealous of my mother and I and that he didn't want me coming out there because it would only cause him trouble."

■ The evidence above narrated will not suffice, in our opinion, to warrant and support the inference that the testator was induced to make the will in question as the result of the undue influence of Eda Smith. As we read and understand the evidence relating to the issue of undue influence, it does no more than show that Eda had the opportunity to make and did make to the testator, her father, derogatory statements about appellant's mother and questioned the legitimacy of appellant. However, assuming arguendo that Eda had the opportunity to influence her father and that her statements were defamatory, such proof is insufficient to show undue influence. In re Newhall's Estate, 190 Cal. 709, 214 P. 231 (1923); In re Klink's Estate, 210 Mich. 614, 178 N.W. 14 (1920); Cude v. Culberson, 30 Tenn.App. 628, 209 S.W.2d 506 (1947); In re Ford's Estate, 19 Wis.2d 436, 120 N.W.2d 647 (1963).[2]

■ Since courts cannot permit a jury to invalidate a will on the ground of undue influence in order to indulge its own concept of how a testator should have disposed of his property, the order admitting the will to probate is affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

2. Although appellant did not assert fraud as a ground for contest, her evidentiary presentation was equally insufficient to support an inference that statements made more than fifteen years prior to execution of the will in question made the testator exclude appellant from his will. In re Newhall's Estate, supra.