665 P.2d 88

David T. YOUNG, a single man; and Michael W. Mason, a single man, Plaintiffs/Appellees/Cross Appellants,

and

Kirby Building Systems, Inc., a Texas corporation, Defendant/Appellee,

v.

ENVIRONMENTAL AIR PRODUCTS, INC., an Arizona corporation, Defendant/Appellant/Cross Appellee.

David T. YOUNG, a single man; and Michael W. Mason, a single man, Plaintiffs/Appellants,

v.

ENVIRONMENTAL AIR PRODUCTS, INC., an Arizona corporation; Kirby Building Systems, Inc., a Texas corporation; William Foster and Betty Foster, husband and wife; Frank Coates and Gloria Coates, husband and wife; and Tonnes Skagestad and Esther Skagestad, husband and wife, Defendants/Appellees.

KIRBY BUILDING SYSTEMS, INC., a Texas corporation, Defendant/Cross Appellant,

v.

ENVIRONMENTAL AIR PRODUCTS, INC., an Arizona corporation, Defendant/Cross Appellee.

William S. FOSTER and Betty Foster, husband and wife, Cross Plaintiffs/Appellants,

v.

ENVIRONMENTAL AIR PRODUCTS, INC., an Arizona corporation, Cross Defendant/Appellee.

No. 2 CA–CIV 4023.

Court of Appeals of Arizona, Division 2.

June 17, 1982.

Rehearing Denied Sept. 27, 1982.

Review Granted Oct. 19, 1982.

Healy & Beal, P.C. by William T. Healy and Robert L. Beal, Tucson, for Young and Mason.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Richard J. Woods and Larry L. Smith, Phoenix, for Kirby Bldg. Systems.

Slutes, Browning, Sakrison & Grant, P.C. by William D. Browning, Tucson, for Environmental Air and Coates.

Walter U. Weber, Tucson, for Foster.

Thomas E. Johnson, Tucson, for Skagestad.

## OPINION

HATHAWAY, Judge.

This appeal arises from a jury verdict against the defendant-appellant Environmental Air Products, Inc. (EAP) for personal injuries suffered by two workmen. The plaintiffs-appellees also cross appeal from a judgment n.o.v. and the provisional granting of a new trial in favor of another defendant, Kirby Building Systems, Inc.

The appellant raises the following issues: (1) EAP cannot be liable in tort because the plaintiffs were EAP employees covered by workmen's compensation; (2) evidence of the receipt of workmen's compensation benefits should have been admitted to prove malingering; (3) special interrogatories should have been submitted to the jury and (4) certain instructions should have been given while others should not have. The cross appeal is based on an alleged conflict in the evidence, which, it is argued, renders the judgment n.o.v. for Kirby improper.

Kirby sold EAP a kit for a large, prefabricated metal building. EAP undertook the construction itself, using its maintenance chief, William Foster, as foreman. Foster had experience erecting smaller metal buildings, but had never supervised such a large project. A crew was hired and began work, but the project was stopped by the Registrar of Contractors because EAP was not a registered contractor. Because of this impediment, EAP negotiated a contract with Cimetta Engineering and Construction Company. According to the contract, Cimetta was to supervise the project and pay the workmen's compensation insurance premiums. According to testimony, this contract may have been merely an accomodation to EAP to allow the project to continue. Cimetta was required to accept Foster (who helped to negotiate the contract) as the foreman for the project and may not have been able to fire him without the approval of Frank Coates, EAP's vice president. Nevertheless, Cimetta did exercise some control over Foster and seemed to have the right to fire the other workmen.

Plaintiff Mason had been hired by EAP before Cimetta was engaged. On the day the EAP-Cimetta contract was signed, Mason went off the EAP payroll and onto Cimetta's. Two days later, plaintiff Young was hired. He went directly on the Cimetta payroll.

It is clear from the testimony that the construction was done improperly by failing to brace the first bay (the space between two rafters) either with permanent or temporary bracing. This improper procedure

resulted in the collapse of the uncompleted building when a strong wind blew through the construction site. The plaintiffs fell off the building and steel rafters fell on them. They collected compensation benefits through Cimetta and sued EAP in tort. The court directed verdicts in favor of Cimetta and its officer, Tonnes Skagestad, as well as the EAP vice president, Frank Coates. The jury returned a verdict against Foster and EAP as Foster's employer. A jury verdict against Kirby was set aside by a judgment n.o.v. The court also granted Kirby a conditional new trial for error in jury instructions.

### EAP's APPEAL

### I

At the end of the plaintiffs' case, the trial court ruled that plaintiffs were employees of Cimetta. It determined, however, that the jury should decide who employed Foster. (In answering a special interrogatory, the jury found that Foster was controlled by EAP.)

EAP contends that the court should have found that the plaintiffs were EAP employees. This would have barred the tort suit, as an employee's sole remedy against his employer is workmen's compensation. In the trial court, EAP based its argument on A.R.S. § 23–902(B), which states:

"When an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractors and the persons employed by him, and his sub-contractor and persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer."

EAP contended that the building of a new plant is a "part or process" of its business. The plaintiffs did not object to this argument. *See Carnes v. Industrial Commission,* 73 Ariz. 264, 240 P.2d 536 (1952); *S.H. Kress & Co. v. Industrial Commission,* 38 Ariz. 330, 299 P. 1034 (1931). A recent case from division one of this court held the building of a sanctuary to be the usual business of a church. *See Greenway Bap-*

*tist Church v. Industrial Commission,* 130 Ariz. 482, 636 P.2d 1264 (App.1981).

■ EAP argues that, as a matter of law, plaintiffs and Foster could not have different employers. We do not agree. It is settled that an employer may not escape liability to persons who are hired by his servant. *See Mahan v. Litton,* 321 S.W.2d 243 (Ky.1959); *Bobick v. Industrial Commission,* 146 Ohio St. 187, 64 N.E.2d 829 (1946); *Larson v. Independent School Dist. No. 11J of King Hill,* 53 Idaho 49, 22 P.2d 299 (1933), which are cited by EAP. The reason for this rule was stated in *Grabe v. Industrial Commission,* 38 Ariz. 322, 299 P. 1031 (1931), a case in which an employer denied his liability under the workmen's compensation statutes. The court held that the injured worker was Grabe's employee, even though he had been hired by a purported independent contractor, because Grabe retained control over the work done and could have fired any of the workers. According to the court:

"... were this not so [,] the beneficent purposes of the act could and would be easily defeated or evaded by unscrupulous employers through the aid of various dummy intermediaries. The statute therefore brushes aside all forms and subterfuges and provides that one just, simple and definite test. If the work be part of the regular business of the alleged employer, does he retain supervision or control thereof? All other matters are of importance only as they throw light on this question." 38 Ariz. at 328, 299 P. at 1034.

■ In the instant case, EAP is not trying to deny liability under the workmen's compensation scheme. Rather, it seeks to escape tort liability by proving that it was the plaintiffs' employer. The policy considerations are therefore different than those in *Grabe.* In *Novenson v. Spokane Culvert & Fabricating Co.,* 91 Wash.2d 550, 588 P.2d 1174 (1979), the court observed that, for workmen's compensation purposes, the right to control is not the only factor in determining the existence of an employer-employee relationship. Additionally, a mu-

tual agreement to establish the relationship must exist between the parties. That agreement may be express or implied. *De-Vall v. Industrial Commission,* 118 Ariz. 591, 578 P.2d 1020 (App.1978).

In *Novenson,* the court stated:

"When the party asserting the existence of an implied employment relation is not an employee seeking statutory compensation, but an employer seeking a defense to a common law suit, different social values are at stake. In the former situation, if an employment agreement is established, moderate statutory benefits are available to the injured worker; however, reaching such a conclusion in the second situation results in the destruction of valuable common law rights to the injured workman. IB A. Larson, Workmen's Compensation Law §§ 47–42(a), 48.10 (1978)." 588 P.2d at 1177.

The status of "employee" cannot be thrust upon an individual without his consent. There must be an express or implied contract of employment, which requires that both parties agree to the employment. 53 Am.Jur.2d, Master and Servant, § 15. The reasons for the requirement are explained in *Larson's* discussion of vicarious liability as contrasted to compensation law:

"The end product of a vicarious liability case is not an adjustment of rights between employer and employee on the strength of their mutual arrangement, but a unilateral liability of the master to a stranger. The sole concern of the vicarious liability rule, then, is with the master: Did he accept and control the service that led to the stranger's injury? If he did, it is of no particular importance between him and the stranger whether the servant enjoyed any reciprocal or contractual rights vis-a-vis the master. Accordingly, the *Restatement of Agency (Second)* says plainly that the master must consent to the service, but nowhere requires that the servant consent to serve the master or even know who he is. Compensation law, however, is a mutual arrangement between the employer and employee under which both give up and gain certain things. Since the rights to be adjusted are reciprocal rights between employer and employee, it is not only logical but mandatory to resort to the agreement between them to discover their relationship. To thrust upon a worker an employee status to which he has never consented would not ordinarily harm him in a vicarious liability suit by a stranger against his employer, but it might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common-law damages. This reasoning applies not only to the question whether there is any employment relation at all, but also to the question whether one of two or more persons is an employer. In such cases, with all the elements of employment having been established as to *some* employer, the issue may be solely whether the particular defendant made a contract with the particular employee." (Emphasis in original) 1C A. Larson, The Law of Workmen's Compensation, § 47.-10 at 8–232 to –234.

■ We hold that, in order to force an employee status on the plaintiffs, EAP must prove a contract between itself and plaintiffs, i.e., the plaintiffs knew they were working for EAP and consented to the employment. Because EAP has not done so, the trial court properly found that the plaintiffs were employed only by Cimetta.

■ EAP complains that it was denied the opportunity to prove this. In cross examining plaintiff Young, EAP's counsel asked the following:

"Q. ... When you went to work, you were hired by Bill Foster?

A. Yes.

Q. He was your boss?

A. Yes.

Q. In your opinion were the two of you working for the same employer?"

This question was properly objected to as calling for a legal conclusion from the witness. Later in the trial, EAP's own counsel elicited the following testimony from plaintiff Mason:

"Q. You figured after you went on the Cimetta payroll that you were working for Cimetta, am I correct?

A. Yes.

Q. Did you think you were working for Environmental Air anymore?

A. Not at all."

This testimony clearly shows the lack of an employment contract with EAP. In addition, all the evidence pointed to an employment relationship with Cimetta. Both plaintiffs were paid by Cimetta and wore Cimetta hardhats. Cimetta provided their compensation insurance. Young filled out Cimetta W–2 forms and other work forms. He applied for the job because he had heard that Cimetta was hiring. Mason went off the EAP payroll and filled out Cimetta forms. Neither plaintiff ever met Frank Coates or knew who he was.

EAP argues that the Cimetta-EAP contract was a sham and that EAP really retained control over the project. However, there was no evidence that plaintiffs were aware of this and consented to work for EAP. It is therefore irrelevant that Foster was still under the control of EAP and that Foster was the foreman from whom plaintiffs took orders.

EAP sees no difference between the instant case and *Conner v. El Paso Natural Gas Co.,* 123 Ariz. 291, 599 P.2d 247 (App. 1979). In *Conner,* the plaintiff's decedent was killed in an explosion at a mine run by Hecla Mining Company and El Paso Natural Gas Company as joint venturers. The plaintiff conceded that the decedent was employed by Hecla and therefore the sole remedy against Hecla was workmen's compensation. However, she claimed the right to sue El Paso in tort because the decedent had no notice that El Paso might also be his employer.

The court pointed out that each joint venturer is both principal and agent of the other venturer and therefore each is the employer of the venture's employees. The court held that the plaintiff's sole remedy against both venturers was workmen's compensation. (It reserved judgment on the issue of whether the employee must have notice of the identity of all venturers.)

■ No argument is made in the instant case that EAP and Cimetta meet the definition of "joint venturers" and we have held that EAP did not employ the plaintiffs. The issue, then, is whether the rule of *Conner* applies to a situation not involving joint venturers or other coemployers. We think not. In a joint venture, each venturer is jointly and severally liable. *Paragon Building Corp. v. Bankers Trust Co.,* 116 Ariz. 87, 567 P.2d 1216 (App.1977). A workmen's compensation or tort award becomes a liability of each venturer. If the injured worker were then allowed to sue one of the venturers, that venturer would be subject to double liability. EAP was not liable for the compensation award, therefore this suit will not amount to multiple liability for EAP. *Conner* is not applicable.

II

■ EAP sought to introduce evidence of Mason's compensation benefits in order to prove that he was malingering. This evidence was excluded because of the collateral source rule, *see Manhattan-Dickman Construction Co. v. Shawler,* 113 Ariz. 549, 558 P.2d 894 (1976). EAP argues that it should be admitted for a different purpose—to show a motive to malinger.

Although the United States Supreme Court has held in an F.E.L.A. case that this evidence is never admissible, *Eichel v. New York Central R. Co.,* 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963), the majority of state courts leave the matter to the discretion of the trial court, which must weigh its probative value against its prejudicial effect. Annotation, 47 A.L.R.3d 234, 238–39:

"For a variety of reasons, however, it is usually acknowledged that the trial judge should exclude such evidence, or admit it only warily. Chief among these reasons is the possible prejudice to the plaintiff which attends informing the jury that he has already received some form of compensation for the injuries complained of. Thus, it has been observed by at least one authority that, although technically pro-

hibited from doing so by the collateral source rule, juries presented with collateral source benefits evidence normally take it into consideration in assessing damages and award the plaintiff a smaller amount by reason thereof; far worse, there is the distinct possibility that, presented with such evidence after the plaintiff has claimed extensive disability, the jury will regard him as a liar whose entire cause of action is manufactured, and will find against him on the very issue of liability. Additionally, it has been observed that evidence of the plaintiff's receipt of benefits from a source independent of the defendant tortfeasor constitutes proof of a collateral fact which, if introduced, might tend to confuse the jury, and that evidence of this nature possesses such slight probative value as proof of malingering that its exclusion will normally always be warranted by the availability of better, less prejudicial evidence upon the issue. It has also been stated that to permit the introduction of collateral source benefits evidence in support of a claim of malingering would discourage the salutory practice of providing for contingencies through accident, health, and other types of insurance."

We believe the best approach is to admit this kind of evidence only if there is other evidence corroborating the claim of malingering. *See id.*, § 4[b]. In this case, Kirby made an offer of proof, but it consisted only of "the bare fact of the plaintiff's receipt of such collateral benefits." *Id.* at 249. We hold this to be insufficient.

### III

■ Twelve special interrogatories were submitted by EAP, but only one was given, in a modified form. EAP claims this was reversible error. We do not agree.

The first four interrogatories asked the jury to determine who employed Foster and in what capacity. Interrogatories 5–12 asked who employed Mason and Young and in what capacity.

EAP cites Moore's Federal Practice for the proposition that "Where the court consents to ask any interrogatories[,] he should ask all that are material to the case." EAP has confused Arizona rule of civil procedure 49(g) with rule 49(h). Rule 49(g) provides for a *special verdict,* which is accomplished by the submission of questions to the jury on each issue of fact. The jury's findings of fact are reported to the court, which applies the law. 5A Moore's Federal Practice 2d ¶ 49.02. In the case of a special verdict, obviously the court should submit interrogatories on all material issues. 5A Moore's Federal Practice 2d, ¶ 49.03[2] at 49–18, n. 12. Rule 49(h), on the other hand, allows for a *general verdict,* in which the jury may also be asked to answer one or more interrogatories. This practice is in the "uncontrolled discretion" of the trial judge. Moore's Federal Practice Rules Pamphlet R49.3 (1982); *see Manhattan-Dickman Construction Co. v. Shawler,* supra. Since the instant case employed a general verdict accompanied by interrogatories, our review is limited. We believe the interrogatories on plaintiffs' employment were unnecessary since the court had correctly ruled that they were employed by Cimetta. The interrogatories on Foster's employment also were unnecessary since we have held that, even if Foster were EAP's man, the plaintiffs were not. Interrogatory number 1 was modified, but EAP has not explained how the modification was in error. We therefore see no abuse of discretion.

### IV

■ The trial court refused to give several instructions requested by EAP. Certain of these dealt with "superseding intervening" cause. There was no evidence of a superseding intervening cause. An intervening force is not a superseding cause if the original actor's negligence creates the very risk of harm that causes the injury. Restatement (Second) Torts § 442B; *see Parness v. City of Tempe,* 123 Ariz. 460, 600 P.2d 764 (App.1979); *Shell Oil Co. v. Gutierrez,* 119 Ariz. 426, 581 P.2d 271 (App.1978). The very risk that is sought to be averted

by bracing the bays first is collapse due to wind.

Other refused instructions told the jury that EAP could be liable only if Foster was its employee and they gave factors relevant to the "right to control test" in distinguishing an independent contractor from an employee. EAP's derivative liability was sufficiently covered by other instructions, however.[1] An instruction on dual employment was given as modified. The modification, however, merely deleted repetitious material.

EAP requested an instruction telling the jury that it could not assess damages against EAP "as a result of anything Frank Coates may have done, should have done, or omitted to do," because he had been removed from the case by directed verdict. It is proper to instruct the jury that an issue that was pleaded and argued has been removed, *Sax v. Kopelman,* 96 Ariz. 394, 396 P.2d 17 (1964), to prevent confusion of the jury. In the instant case, however, the jury was told in closing argument that it could base its decision only on Foster's conduct.

The last refusal that EAP challenges concerns an instruction that would have told the jury that the award is not subject to federal income taxes. *Mitchell v. Emblade,* 80 Ariz. 398, 298 P.2d 1034, modified 81 Ariz. 121, 301 P.2d 1032 (1956), holds to the contrary.

### PLAINTIFFS' CROSS APPEAL

Plaintiffs sued Kirby for negligence, strict liability and breach of warranty, but only the negligence theory was pursued at trial. In response to special forms of verdict, the jury attempted to return a verdict in favor of plaintiffs and against Kirby for $5,000 each, although the sum assessed against EAP was $281,500 for Young and $172,500 for Mason. The court refused this verdict and the jury came back with verdicts against all defendants, including Kirby, of $287,500 for Young and $178,500 for Mason. Kirby moved for a judgment n.o.v., which was granted, as was its alternative motion for a new trial. Young and Mason appeal from both. They claim there was a conflict in the evidence regarding Kirby's negligence, which makes a judgment n.o.v. inappropriate.

If, when treated in the light most favorable to the verdict, the evidence is not so substantial that reasonable men could discern facts to support the verdict, a judgment n.o.v. is proper. *Bond v. Cartwright Little League, Inc.,* 112 Ariz. 9, 536 P.2d 697 (1975). The evidence is not weighed; rather, the court tests its sufficiency. *In re Estate of Accomazzo,* 16 Ariz.App. 211, 492 P.2d 460 (1972).

Plaintiffs point to two incidents which, they claim, constituted negligence on Kirby's part: (1) The failure to supply a construction manual with the kit and (2) the failure to investigate Foster's competence after Foster informed a Kirby representative of Foster's intent to use an improper construction sequence.

The negligent act that caused plaintiffs' injuries was the failure to put

---

1. "You are instructed that a corporate defendant acts or fails to act by and through its duly authorized and acting agents and employees, and such corporation is responsible for the acts or omissions committed by its agents or employees acting within the scope of their agency or employment.

   \*   \*   \*   \*   \*   \*

   An employer may be responsible for the negligent acts of his employee even though the employee may be loaned to another as long as the employee is furthering the business interest of his original employer by the service rendered to the other.

   No new employment relationship will be inferred unless command of the employee has been surrendered and such an inference of a new employment relationship will not be made from the mere fact that the employee is on the other's payroll.

   Control or right to control determines liability."

   EAP also alleges error in the giving of this instruction, as it does not contain the "right-of-control" factors used to distinguish between an independent contractor and an employee. EAP's derivative liability did not rest on these factors. It rested on the doctrine of respondeat superior, which arises when an employer has control or right of control of the employee. *See Lee Moor Contracting Co. v. Blanton,* 49 Ariz. 130, 65 P.2d 35 (1937).

temporary cables or permanent cross bracing on the rafters. A manual would have stated the necessity for this bracing. The testimony was contradictory as to whether Foster's plan was to brace the bay and whether he did divulge his improper construction sequence to a Kirby representative. It was uncontroverted, however, that Foster knew the necessity of bracing the bay. The lack of warning, therefore, was not the proximate cause of the injury. In fact, Foster's testimony was only that a manual would have given him more confidence in advocating a braced-bay sequence in his discussions with Coates. It is obvious that Foster knew the risk created by an unbraced structure, but decided to take the risk anyway. In such a case, the manufacturer has no duty to warn of the known risk. *See Rodriguez v. Besser Co.*, 115 Ariz. 454, 565 P.2d 1315 (App.1977); *Jacobson v. Colorado Fuel and Iron Corp.*, 409 F.2d 1263 (9th Cir.1969). The trial court correctly granted the judgment n.o.v. Because of our holding, it is unnecessary to consider the conditional granting of a new trial.

## FOSTER'S CROSS APPEAL

After the jury trial on the main issues, the court sat without a jury to consider whether Foster was entitled to reimbursement by EAP for litigation costs and other liability arising from the lawsuit. The trial judge was allowed, by stipulation of counsel, to consider evidence adduced at the earlier trial. It ruled that Foster was not entitled to indemnity.

■■■■ Contribution or indemnity among joint tortfeasors is not allowed in Arizona. *Pinal County v. Adams*, 13 Ariz. App. 571, 479 P.2d 718 (1971). An exception is made if the person seeking indemnity has done the negligent act at the direction of another and in reliance on the lawfulness of the act. *See id.,* Restatement of Restitution, § 90. Although no findings of fact were requested and none were made, the necessary finding to support the judgment was that Foster's negligent conduct did not result from the direction of EAP. If a necessary finding is supported by any substantial evidence, it will not be disturbed on appeal. *See Gressley v. Patterson Tillage & Leveling, Inc.,* 119 Ariz. 154, 579 P.2d 1124 (App.1978), overruled on other grounds in *Bouldin v. Turek,* 125 Ariz. 77, 607 P.2d 954 (1979).

■■■■ EAP's brief states that there is substantial evidence to support the trial court's necessary finding, but it gives no citations to the record to illustrate this argument, as required by Rule 13(a)(6) of the Rules of Civil Appellate Procedure. This is especially trying in a case of such complexity and with such a large record. *See Lazear v. Pendergrass,* 39 Ariz. 111, 4 P.2d 386 (1931); 1 Arizona Appellate Handbook § 2.3.2.2 (a brief without citations to the record may be stricken). Because of our familiarity with the record, however, we look for supporting evidence ourselves. There is no evidence that Coates directed Foster to construct the building carelessly, except for inferences from testimony that Foster felt pressured to do the job quickly and cheaply. Contradicting this is Coates' testimony that he did not direct Foster to cut corners. This testimony will support the judgment.

Foster points to Rule 52(a) of the Rules of Civil Procedure for the proposition that the trial court was bound to find that Foster acted negligently at the direction of EAP because the jury in the main case had found by special interrogatory that Foster was an employee of EAP. This does not follow. An employee may fail to qualify for indemnification if he performs a negligent act absent the direction of his employer. *See* Restatement of Restitution, § 90, discussed above.

Affirmed.

HOWARD, C.J., and BIRDSALL, J., concur.