557 P.2d 1087

**BEKINS VAN LINES COMPANY, a corporation, Appellant,**

v.

**HARTFORD INSURANCE GROUP, a corporation, Appellee.**

**No. 2 CA–CIV 2125.**

Court of Appeals of Arizona, Division 2.

Sept. 30, 1976.

Rehearing Denied Nov. 4, 1976.

Petition for Review Denied Dec. 7, 1976.

Merchant, Lohse & Bloom by Ashby I. Lohse, Tucson, for appellant.

Mesch, Marquez & Rothschild, P.C. by Tom R. Clark, Tucson, for appellee.

OPINION

HOWARD, Chief Judge.

Bekins Van Lines Company, defendant below, appeals a judgment for $1,000 in favor of plaintiff-appellee Hartford Insurance Group, as subrogee of one Harry B. Warren.

The facts show that Mr. Warren stored six parcels with Bekins in May of 1971. The warehouse receipt and storage agreement provided that the depositor could either release Bekins' liability for damages to 30 cents per pound per article or could declare a lump sum value on the entire lot, in which case Bekins agreed to "indemnify the depositor for all physical loss or damage to property while in the care, custody and control of company, caused by: . . . 2. Burglary, theft, pilferage, mysterious disappearance vandalism . . . ." Mr. Warren elected to declare a lump sum value of $1,000 on the six parcels and therefore paid an additional charge of $.50 a month for the increased coverage. The documents also contained provisions disclaiming liability for items of "extraordinary value" unless such items were specifically listed. In September of 1971, Mr. Warren learned that some of the parcels he had stored were missing. There was evidence that the items might have been stolen by a Bekins employee. Mr. Warren filled out a statement of claim, listing as missing a color television set, a 30.06 rifle and an antique German double-barreled shotgun which he said was a family heirloom.

An exchange of correspondence between Bekins and Mr. Warren ensued. Bekins demanded substantiation of the ownership and value of the missing items, and Mr. Warren replied that he simply could not provide receipts or sales slips for the guns as Bekins had requested since they had been in the family for a considerable period of time. Warren, however, did produce a receipt for the television set and claimed an approximate value of $2,830 for all three items, $2,400 of which was for the

antique gun. Bekins continued to insist on "substantiation" of the value of the guns.

On November 2, 1971, Bekins sent a check for $455 to Mr. Warren (which included $50 attributable to the antique gun) as full settlement of all claims Warren had against Bekins. Frustrated in his attempts to deal with Bekins, Warren turned to the Hartford Insurance Group which carried his homeowner's policy. On November 16, Hartford notified Bekins that it would pay Warren the reasonable value of the missing items, deduct any amounts Bekins had paid to Warren, and look to Bekins for reimbursement of the balance.

On December 2, 1971 Hartford agreed to settle Warren's claim for $1,623, from which it deducted the $455 Bekins had sent Warren. Mr. Warren then cashed the Bekins check and received a check for $1,168 from Hartford.

Most of the evidence at trial was documentary. The trial court entered judgment for Hartford in the sum of $1,000 stating:

"The Court agrees with the position of the Defendant but feels it was unreasonable in demanding proof of ownership of the rifle by sales slip or otherwise when said evidence was not available."

Appellant presents nine questions for review; however, we need only discuss whether the antique shotgun was excluded from Bekins' liability as an item of extraordinary value which Warren did not declare.

The exclusion of items of extraordinary value appeared in three places—on the preliminary warehouse receipt, the service order agreement and the final warehouse receipt.

Paragraph 9 of the service order agreement signed by the parties stated in bold red print:

"LIMITATION OF COMPANY'S LIABILITY:

A. ITEMS OF EXTRAORDINARY VALUE: Documents, currency, money, jewelry, watches, precious stones or articles of extraordinary value must be list-

ed in writing under Special Provisions. Carrier will not be liable for their loss or damage unless they have been listed. The Company recommends that the customer take such valuable items with him."

No listing of the shotgun appears in Paragraph 4 under "Special Provisions". The failure to list the shotgun on this document is not dispositive, however, since the service order agreement recited that it would be superseded by the standard warehouse receipt and contract unless the party objected to the receipt's terms within fifteen days of its mailing. The standard warehouse receipt issued to Mr. Warren declared that its terms and those of the preliminary warehouse receipt constituted the entire contract between the parties.

Both the preliminary and the final receipt contained the following provision:

"III. COMPANY'S BASIC LIABILITY: CONTRACTUAL EXCLUSIONS FROM LIABILITY

A. The following shall be applicable both when the Depositor has declared a lump sum value on the entire lot and when the Depositor has released the value of the goods to 30¢ per pound per article.

IT IS AGREED THE COMPANY SHALL BE:

\*      \*      \*      \*      \*      \*

2. NOT LIABLE for loss, injury, damage or delay caused by or resulting from:

\*      \*      \*      \*      \*      \*

(f) loss of or damage to documents, currency, money, jewelry, watches, precious stones or articles of extraordinary value including accounts, bills, deeds, evidences of debt, securities, notes, postage stamps, trading stamps, stamp collections, revenue stamps, letters or packets of letters, articles of peculiarly inherent value (whether such extraordinary or peculiarly inherent value arises from the article's age, being irreplaceable, unique or some other cause) precious metals or articles manufactured therefrom, UNLESS said property and articles are specifically listed either on the Preliminary or this Warehouse Receipt; . . ."

■■■ Although Hartford argues that the term "extraordinary value" is ambiguous and should be construed against Bekins, we find no such ambiguity.[1] The mere fact that parties to an instrument disagree as to its meaning does not establish an ambiguity. *University Realty & Development Co. v. Omid-Gaf, Inc.,* 19 Ariz. App. 488, 508 P.2d 747 (1973). The shotgun clearly falls within the terms of the exclusion because it was a valuable antique and a family heirloom. Hartford, in a letter dated April 27, 1972, described the gun as having a "silver inlaid barrel and stock" and estimated its value as between $1,000 and $1,800 depending on its condition. Mr. Warren himself in a letter of October 21, 1971, stated:

"The second gun would be classified as a 'family treasure' and is irreplaceable. I claim $2,400.00 for this gun."

These descriptions of the gun thus clearly coincide with the language of the exclusion.

We must still determine whether Mr. Warren listed the antique gun so as to avoid the effect of the exclusion. On the preliminary warehouse receipt under the heading "The Goods Received Are as Follows:" these words appear: "Bundle— (Guns)". Hartford asserts that this designation satisfies the requirement that items of extraordinary value be listed.

1. The general rules of construction apply in subrogation cases. *Wyoming Farm Bureau Mutual Insurance Co. v. State Farm Mu-* *tual Automobile Insurance Company,* 467 F. 2d 990 (4th Cir. 1972).

The contract requires that the items be "specifically listed." Words used by the parties are to be given their normal, ordinary meaning and are to be read in the context of the purposes sought to be obtained by the agreement. *Brady v. Black Mountain Investment Co.,* 105 Ariz. 87, 459 P.2d 712 (1969). We do not find that "guns" qualifies as a specific listing within the ordinary usage of the word "specific", nor do we find that it serves the apparent purpose of the contract clause, i. e. to put the warehouseman on notice of items of extraordinary value so that he may take appropriate precautions to safeguard them. The broad term "guns" gives no more notice that the parcel contains a valuable antique than the word "dishes" would indicate that a carton contains a rare Chinese porcelain plate. We therefore find that the word "guns" is not a specific listing so as to negate the exclusion of items of extraordinary value.

Although citing no authority, Hartford also argues that Bekins' grant of $50 for the shotgun in its settlement payment constituted a waiver of any exclusion of the gun from coverage. We do not find that the conduct of Bekins amounted to such a waiver.

We therefore hold that the antique shotgun was excluded as an item of extraordinary value from Bekins' liability and that Bekins is liable only for the loss of the color television set and 30.06 rifle. Since the Hartford payment to Warren attributed $413.00 to these items and the Bekins settlement was for $455.00, Hartford was not entitled to further reimbursement from Bekins.

The judgment for $1,000 is reversed and the trial court is directed to enter judgment in favor of appellant and against appellee.

KRUCKER, and HATHAWAY, JJ., concur.