347 So.2d 647 (1977)
SANFISKET, INC., a Florida Corporation, Trading and Doing Business As Sanitary Fish Market, Appellant,
v.
ATLANTIC COLD STORAGE CORPORATION, a Florida Corporation, Appellee.
No. 76-724.
District Court of Appeal of Florida, Third District.
May 24, 1977.
Rehearing Denied July 20, 1977.
*648 Dubbin, Schiff, Berkman & Dubbin and Jeffrey D. Rubinstein, Miami, for appellant.
Jepeway, Gassen & Jepeway, Miami, for appellee.
Before BARKDULL, HAVERFIELD and HUBBART, JJ.
PER CURIAM.
Plaintiff, Sanfisket, Inc., appeals a judgment in its favor for $1,250 as computed under the terms of the warehouse receipt limiting the liability of defendant warehouseman for non-delivery of goods.
Atlantic Cold Storage Corporation stored 50 cases of frozen shrimp weighing 2,500 pounds for the account of Bill West Company. Sometime in May 1973 Sanfisket, Inc. purchased this shrimp from Bill West Company via a stock transfer for $5,500. Thereafter, on May 30, Atlantic issued to Sanfisket a non-negotiable warehouse receipt evidencing the shrimp transfer. In November Sanfisket demanded delivery; Atlantic was unable to locate the shrimp in its freezer, and notified Sanfisket of this fact. The president of Sanfisket alleged that at this point one of the principal officers of Atlantic orally advised him to replace the shrimp and that Atlantic would reimburse Sanfisket for the cost. Sanfisket purchased 2,500 pounds of shrimp for $8,000 and sent the invoice to Atlantic. Atlantic then tendered to Sanfisket a check for $1,175 representing Atlantic's limit of liability of 50 cents per pound under the terms of the warehouse receipt less $75 for the unpaid storage charges from May  November, 1973. Sanfisket refused to accept the check and filed the instant action for conversion, breach of contract and negligence against Atlantic for non-delivery of the shrimp, and asked for $8,000 in damages. Atlantic counterclaimed for storage charges. After a non-jury trial, the judge entered final judgment in favor of Sanfisket for $1,250 based upon the following:
"1. Plaintiff purchased fifty (50) cases of shrimp (2,500 lbs.) which were stored with the Defendant corporation.
"2. The Plaintiff received a warehouse invoice (Plaintiff's exhibit # 1). At no time did the Plaintiff seek an inventory of the goods he purchased, nor did he ask to increase the liability of the Defendant, pursuant to the warehouse receipt.
"3. The Plaintiff failed to sustain his burden of showing a subsequent oral agreement for payment by the Defendant to the Plaintiff for replacement of the goods. The Plaintiff did not offer proof of an offer, acceptance or consideration.
"4. The evidence does not support the contention that the Defendant converted the goods to its own use.
"5. Defendant did not sustain its burden as to storage charges due to the Defendant from the Plaintiff.
"6. The Court finds legally and factually that the warehouse receipt sufficiently notifies the Plaintiff of its limit of liability."
Sanfisket basically argues that the trial court erred in finding the evidence did not constitute a conversion by warehouseman, Atlantic Cold Storage.
In order for Sanfisket to prove a conversion upon Atlantic's failure to deliver the shrimp upon demand, Sanfisket must show that Atlantic had the shrimp at the time of the demand and was able to comply therewith. See D'Aloisio v. Morton's, Inc., 342 Mass. 231, 172 N.E.2d 819 (1961). The record reflects that Atlantic had possession of the shrimp at the time of the issuance of the warehouse receipt on May 30 and when Sanfisket demanded the shrimp in November, Atlantic was unable to find it. None of the witnesses could explain the shrimp's disappearance and to date the disappearance *649 remains unexplained. This evidence only permits the finding of negligence on the part of Atlantic, not a conversion. Cf. Marine Office  Appleton & Cox Corp. v. Aqua Dynamics, Inc., 295 So.2d 370 (Fla.3d DCA 1974); Bean v. Security Fur Storage Warehouse, 344 Mass. 674, 184 N.E.2d 64 (1962). Atlantic admits that it was negligent. Thus, this point of appellant lacks merit.
Sanfisket also contends the trial court erred in failing to find that the terms of the warehouse receipt were insufficient to limit defendant's liability because the language limiting liability was not conspicuous and Sanfisket was not notified thereof. We cannot agree.
Section 677.7-204(2),[1] Florida Statutes (1973) nowhere provides that the clause or language limiting liability in a warehouse receipt in case of loss must be conspicuous. Considering the subject receipt contained a limit of liability clause (50 cents per pound) and Sanfisket did not seek an inventory of the shrimp or an increase in Atlantic's liability pursuant to the terms of the receipt, we conclude the trial judge properly applied the 50 cents per pound limit of liability. See World Products, Inc. v. Central Freight Service, Inc., 222 F. Supp. 849 (D.C.N.J. 1963).
On Sanfisket's final point on appeal, we find no reversible error.
Affirmed.
NOTES
[1] "(2) Damages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage, and setting forth a specific liability per article or item, or value per unit of weight, beyond which the warehouseman shall not be liable; provided, however, that such liability may on written request of the bailor at the time of signing such storage agreement or within a reasonable time after receipt of the warehouse receipt be increased on part or all of the goods thereunder, in which event increased rates may be charged based on such increased valuation, but that no such increase shall be permitted contrary to a lawful limitation of liability contained in the warehouseman's tariff, if any. No such limitation is effective with respect to the warehouseman's liability for conversion to his own use."