572 P.2d 128

**Alfred HURVITZ and Rose Hurvitz, husband and wife, Appellants,**

v.

**James M. COBURN and Karin E. Coburn, his wife, City of Tucson, an Arizona Municipal Corporation, Appellees.**

**No. 2 CA–CIV 2417.**

Court of Appeals of Arizona,
Division 2.

Nov. 30, 1977.

---

W. Mercer Bouldin, Tucson, for appellants.

Chandler, Tullar, Udall & Redhair by Richard Davis and D. B. Udall, Tucson, for appellees.

## OPINION

HOWARD, Chief Judge.

This is an appeal from a judgment entered on a defense verdict in a personal injury case and the denial of motions for a new trial or judgment N.O.V.

Appellants contend (1) that the issue of contributory negligence should never have been submitted to the jury and that their motions for a directed verdict, judgment N.O.V. and for a new trial should have been granted; (2) that the evidence clearly shows Coburn had the last clear chance to avoid the accident; (3) that certain jury instructions were erroneously given or refused; and (4) that the trial judge was guilty of improper conduct before the jury. We do not agree.

On review of a motion for directed verdict or judgment N.O.V., we must take that view of the evidence most favorable to the verdict and, from that evidence and inferences reasonably and justifiably to be drawn therefrom, determine whether, under law, the verdict can be sustained. *Tucson Title Insurance Company v. D'Ascoli,* 94 Ariz. 230, 383 P.2d 119 (1963). A motion for judgment N.O.V. should be denied if there is any substantial evidence from which reasonable men could have found the ultimate facts to be such as to sustain the verdict. *In Re Estate of Accomazzo,* 16 Ariz.App. 211, 492 P.2d 460 (1972).

The evidence, considered in the light most favorable to support the verdict, shows that East Broadway in Tucson, Arizona was 60 feet wide at the time of the accident. There were two lanes of traffic westbound and because it was approximately 4:30 p. m., there were three lanes for eastbound traffic. Each lane was 12 feet wide. The northernmost lane for traffic going east is known as a reversible lane. During the hours of heavy traffic in the early morning this lane provides a third lane of traffic for cars going west. In the afternoon, between 4:00 and 6:00 p. m., it is used for eastbound traffic.

Officer Coburn was driving a marked police unit equipped with siren and flashing lights. He was accompanied by a young man, John Chandler, who was not a policeman or a trainee but was riding along as part of a community relations program.

Officer Coburn received a radio transmission ordering him to proceed under Code Two to an armed robbery in progress on East Broadway. Regulations of the Tucson Police Department introduced into evidence, provided the following as to the operation of an emergency vehicle under a Code Two:

"Code Two Definition—Urgent assignment, not an emergency.

A CODE TWO call is a priority call and as such shall be answered immediately. If officers are writing a traffic citation or are making a field interrogation, when they receive a CODE TWO call, they should respond immediately. A CODE TWO call is NOT AN EMERGENCY CALL. A CODE TWO must be answered without the use of red light or siren and the police car shall be driven at a safe and lawful speed; all traffic laws must be obeyed. The four-way emergency flashers are not authorized for use while the vehicle is in motion and responding to a Code Two call. They are to be used as safety measures when a police unit is stopped."

The police unit was originally in the curb lane going east on Broadway. In order to avoid traffic impeding his progress, Coburn went into the reversible lane before reaching Park Avenue, the north-south street which forms the first intersection west of the intersection of Fremont and Broadway. The light at Park Avenue was green when Coburn crossed the street. There were five or six cars behind him. Coburn was going

44 to 55 mph although the speed limit was 35 mph. The length of the block between Park and Fremont Avenues was 434 feet. When Coburn was 104 to 115 feet from Fremont, he saw appellants' car starting into Broadway. At that time the front end of appellants' vehicle was touching or just over the line which divided the two westbound lanes and was traveling 15 to 20 mph. Coburn saw that the driver was looking eastward and did not see him, so he put the police unit into a controlled right skid. He could have skidded straight and, in retrospect, the accident would not have occurred. However, Coburn knew that Fremont Avenue, south of Broadway, was a dirt road and dead-ended less than one block south. He also knew that most cars coming from the position of appellants' car at the stop sign turned either east or west. He therefore went into the right skid hoping that Mr. Hurvitz was going to turn and thereby avoid a collision. The police unit left 61 feet of skid marks. The point of impact was 9'10" north of the south curb of Broadway and 4'2" east of the west curb of Fremont. Mr. Hurvitz, prior to entering the intersection, never saw the police unit. In fact, he did not see it prior to the collision. Had he looked west, even as he entered Broadway and applied his brakes, the accident would not have occurred.

■ From the foregoing, the jury could well have believed that Hurvitz was guilty of contributory negligence in failing to keep a proper lookout. The trial court did not err in refusing to direct a verdict, grant judgment N.O.V. or grant a new trial. So too, the issue of last clear chance, which was submitted to the jury, was a jury question and did not mandate the granting of appellants' motions.

■ Appellants contend the trial court erred in giving the following instruction on contributory negligence:

"Whether contributory negligence is a defense is left to you. If both plaintiffs and defendants were negligent, and if the negligence of each was the cause of the injury, the plaintiffs *should* not recover. This means that you must decide two things: 1. Whether the plaintiffs were contributorily negligent; and 2. if the plaintiffs were negligent, whether this negligence *should* prevent a verdict in favor of the plaintiffs." (Emphasis added)

They maintain that use of the word "should" was error. Since there was no objection to the instruction below, any error was waived unless it was fundamental. *Baker v. Atchison, Topeka and Santa Fe Railway Co.,* 11 Ariz.App. 387, 464 P.2d 974 (1970). In *Manhattan-Dickman Construction Co. v. Shawler,* 113 Ariz. 549, 558 P.2d 894 (1976), the court held that the word "may" was preferable but did not hold it to be error, let alone fundamental error, to give the "should" instruction.

■ Appellants next complain that the trial court erred when it gave the jury an instruction on gross negligence but refused to instruct the jury on punitive damages if it found gross negligence. We find any error to be harmless because the jury did not award compensatory damages. In order to recover punitive damages the jury would first have to find actual damages. Therefore, since the jury found against them, appellants were not prejudiced. Cf. *LaFrentz v. Gallagher,* 105 Ariz. 255, 462 P.2d 804 (1969).

■ The trial court, in its instructions, told the jury that in deciding the standard of care required of a police officer in responding to a Code Two assignment, it could consider the Tucson Police Department manual. It did not read, in its instructions to the jury, the provisions of the manual which we have previously set forth. Appellants now claim that it was error not to read the regulation verbatim to the jury. Our examination of the record discloses no objection to the court's instruction based upon this ground which appellants now urge. Such objection is therefore waived and cannot be urged for the first time on appeal. In any event, it was in evidence and could have been read to the jury by appellants' counsel. Rule 51(a), Arizona Rules of Civil Procedure. Likewise, appellants cannot for the first time contend on

appeal that the court failed to give their Instruction No. 14, when they made no such objection below.

 The trial court refused to instruct the jury that Coburn's violation of the police regulation on Code Two assignments constituted negligence per se. Appellants claim this constituted error. We do not agree. The violation of a regulation which fixes a standard of care is ordinarily negligence per se. Udall, Arizona Law of Evidence, § 118. However, in the context of the regulation and the circumstances there can be no negligence per se. The regulation requires the officer responding to a Code Two assignment to drive at a safe and lawful speed, which is no more than a requirement to obey the speed limits. Driving in excess of the speed limit is not negligence per se. *Ruiz v. Faulkner,* 12 Ariz. App. 352, 470 P.2d 500 (1970). Therefore, violation of the police regulation by traveling in excess of the speed limit cannot be negligence per se.

 Appellants next allege error in the refusal to give their Instruction No. 16 concerning the law relative to an emergency vehicle. This instruction would have told the jury that the police vehicle traveling as an emergency vehicle was required to give an audible signal by siren and flash its red lights as it approached the immediate vicinity of the intersection where the collision occurred. A.R.S. § 28–624 states that the driver of an authorized emergency vehicle may exceed the prima facie speed limit so long as he does not endanger life or property. When an authorized emergency vehicle is traveling as such, A.R.S. § 28–775 requires the police vehicle to give an audible signal by use of the siren. However, the driver of the police vehicle here was not exercising the privilege given by A.R.S. § 28–624, but was attempting to comply with the requirements of his Code Two assignment. He was not responding to an emergency call as set forth in A.R.S. § 28–624. The trial court did not err in refusing to give the instruction.

 Lastly, appellants accuse the trial judge of improper conduct which belittled their attorney in front of the jury. At no time during the trial did appellants object to such alleged misconduct. They therefore waived their right to appeal on such grounds. *Allied Van Lines v. Parsons,* 80 Ariz. 88, 293 P.2d 430 (1956).

Affirmed.

HATHAWAY, J., and J. RICHARD HANNAH, Judge, Superior Court, concur.

NOTE: Judge JAMES L. RICHMOND having requested that he be relieved from consideration of this matter, Judge J. RICHARD HANNAH was called to sit in his stead and participate in the determination of this decision.