598 P.2d 515

Janet LERNER, an unmarried woman,
Plaintiff/Appellant,

v.

Hyman BRETTSCHNEIDER and Fay
Brettschneider, husband and wife, and
Mr. Brett Furs & Fashions, Inc., an Arizona Corporation, Defendants/Appellees.

2 CA–CIV 3102.

Court of Appeals of Arizona,
Division 2.

May 29, 1979.

Rehearings Denied June 28, 1979.

Reviews Denied July 19, 1979.

Law Offices of John Wm. Johnson by Christopher Paul Tabing, Tucson, for plaintiff-appellant.

Chandler, Tullar, Udall & Redhair by D. B. Udall, Tucson, for defendants-appellees.

## OPINION

HATHAWAY, Judge.

Appellant [hereinafter bailor] brought an action against appellees [hereinafter bailee] for conversion and breach of contract. The jury returned a verdict awarding bailor $4,000 compensatory and $5,000 punitive damages. The trial court granted bailee's motion for judgment n. o. v. under Rule 50(b), Rules of Civil Procedure, 16 A.R.S., reducing the award to $100 compensatory damages. Bailor appealed from this judgment. Assuming the judgment n. o. v. was improper, bailee raised the cross-issue of whether the jury properly awarded punitive damages.

In reviewing a judgment n. o. v., we view the evidence most favorably to sustaining the verdict to determine whether the evidence would permit a reasonable person to reach the verdict. *Hurvitz v. Coburn,* 117 Ariz. 300, 572 P.2d 128 (App.1977).

Neither this court nor the trial court may substitute its judgment for the jury's. The sole issue is whether there is sufficient evidence to permit the jury rationally to conclude as it did.

Viewed in this light, the facts are that in June 1964 bailor stored two fur garments, including the mink coat involved in this action, with bailee, a professional furrier. Bailee filled out the face of the storage receipt by inserting information in the appropriate blanks, including a valuation of $100 for the mink. Although bailee knew the mink was worth substantially more than $100, he did not discuss the actual value with bailor. Bailee used the $100 value because his insurance company advised him to use this arbitrary figure. Bailee gave the receipt to bailor without requesting her to read or sign it. Believing the receipt was a simple identification check, bailor took it without reading or signing it. Bailor subsequently stored a third, less valuable fur garment, with bailee; a notation to that effect was made on the face of the receipt.

In small type, on the face of the storage receipt, it states:

"The articles named below to be stored for nine months only, beginning from date of receipt, subject to conditions on reverse side of this receipt."

On the reverse side, below the space for the bailor's signature, it states:

"Acceptance of this receipt constitutes an agreement by the customer to be bound by all its stipulations and conditions as fully as though this receipt was signed by the customer."

The relevant terms and conditions, which incorporate the information on the face of the receipt, state:

"7. Storage charges are payable not later than the expiration of the storage period as above noted and the right is reserved to withhold any and all articles until all charges are paid.

\*    \*    \*    \*    \*    \*

9. Articles, or any of them, left beyond the date mentioned herein shall be

deemed restored upon the same terms and conditions as those herein contained, the undersigned however reserves the right to change the charges.

10. The undersigned shall not be liable for loss or damage resulting from invasion, insurrection, riot, civil war, strikes, usurped power, commotion or act of God, or any cause beyond the control of the undersigned, nor for deterioration or discoloration from natural causes, nor for loss or damage from any cause other than those for which liability is specifically assumed *nor in any case including the negligence of the undersigned, beyond the valuations heretofore specified,* which valuations the depositor represents are not in excess of the amounts paid for the articles nor in any case including the negligence of the undersigned, for any greater amount than received by the undersigned from the insurance company for the loss of or damage to any article or articles represented by this receipt." (Emphasis added)

In 1970, when bailor was in bailee's shop, she inquired about her mink and about bailee's failure to bill her for storage fees. Claiming to be too busy to search for the mink in the vault, bailee told her the storage fees would accrue until she decided to retrieve the mink. He also offered to buy the mink, but bailor refused to sell it. Bailee's business included refashioning older, full length coats such as bailor's into contemporary styles for sale in his shop.

In December 1975, bailor attempted to retrieve her mink. Without searching his storage vault for it, bailee stated that he didn't have it. He asserted that bailor had left the mink in storage too long for him to be required to keep it. At trial, however, he admitted that furs were often left for as long as bailor stored her fur. He also testified that he thought that he had the right to liquidate furs left over six years, provided notice by certified mail was given to the owner. Bailor never received notice, nor did bailee have any record of sending such notice. Bailee cannot explain the mink's disappearance, although he testified that he

thought the mink had been in storage for at least six or seven years.

The parties dispute whether the bailment contract in this case is governed by the Uniform Warehouse Receipts Act, A.R.S. §§ 44–701 to 44–759 (repealed December 31, 1967) [hereinafter UWRA], or the Uniform Commercial Code, A.R.S. §§ 44–2901 to 44–2940 [hereinafter UCC]. It would not be necessary to reach this issue, however, if the evidence supports a finding that bailee converted the property. Limitations on liability are inapplicable to conversion under both the UWRA, *Arizona Storage & Distributing Co. v. Rynning,* 37 Ariz. 232, 293 P. 16 (1930), and the UCC. A.R.S § 44–2909(B).

Bailor had the burden of proving the conversion. *Performance Systems, Inc. v. Kahl,* 24 Ariz.App. 92, 536 P.2d 213 (1975). In the context of our review of the judgment n. o. v., "burden of proof" means the burden of producing sufficient evidence to create a jury question as to conversion. If there was sufficient evidence, then it was for the jury to decide whether it was convinced by a preponderance of the evidence that a conversion actually occurred. See generally, F. James & G. Hazard, Civil Procedure, §§ 7.5—7.7 (2nd ed. 1977). Circumstantial evidence may be sufficient to meet the production burden, but the inference from the facts proven to the fact of conversion must not be speculative or conjectural. *Performance Systems, Inc. v. Kahl,* supra.

To satisfy the production burden in this case, the evidence must permit the rational inference that bailee wrongfully exercised control over bailor's mink; negligent care of the mink is insufficient. *Performance Systems, Inc. v. Kahl,* supra. Bailor argues that the evidence rationally supports the inference that bailee either misdelivered the mink or used it for his own purposes. We disagree.

Misdelivery constitutes wrongful exercise of control. *Lipman v. Peterson,* 223 Kan. 483, 575 P.2d 19 (1978); Restatement (Second) of Torts, § 234 (1965). The inference that bailee misdelivered the mink,

however, is merely speculative. It is just as probable that the mink was lost or stolen. See *Sanfisket, Inc. v. Atlantic Cold Storage Corp.,* 347 So.2d 647 (Fla.App.1977).

Use of the bailed property for the bailee's purposes also constitutes wrongful exercise of control. *Douglass v. Hart,* 103 Conn. 685, 131 A. 401 (1925). Like the inference of misdelivery, however, the inference that bailee used the mink for his own purposes, as opposed to negligently caring for it, is speculative. The evidence that bailee offered to buy the mink, claimed the right to confiscate it after six years, and knew it was missing before searching his vault is as consistent with negligence as it is with conversion.

Because the evidence does not adequately support the inference of conversion, the trial court properly refused to permit the jury to speculate on whether bailee converted the mink. The rule prohibiting enforcement of limitations of liability when bailee converts the bailed property is therefore inapplicable.

As for whether the limitation of liability is part of the bailment contract, we turn first to the choice of law issue. Both the UWRA and UCC prohibit bailee from contracting away his duty of care, but permit him to limit his liability. A.R.S. § 44–703 (repealed 12/31/67); A.R.S. § 44–2909. If bailee limits his liability, the UCC specifically requires him to provide an option for increased coverage, whereas the UWRA does not. The cases analyzing this condition split as to whether the condition implies the requirement that bailee notify bailor of this option. Compare e. g., *Melodee Lane Lingerie Co. v. American Dist. Tel. Co.,* 18 N.Y.2d 57, 218 N.E.2d 661, 271 N.Y.S.2d 937 (1966) with e. g., *Sanfisket, Inc. v. Atlantic Cold Storage Corp.,* supra. Instead of an absolute rule requiring or exempting notice, other cases have applied a standard contract formation analysis to determine whether the limitation is a part of the contract. E. g., *Carter v. Reichlin Furriers,* 34 Conn.Sup. 661, 386 A.2d 647 (1977).

We believe the contract analysis is the better approach, for it allows the court to consider all the facts and circumstances surrounding the bailment. Because the same contract analysis applies to both the UWRA and the UCC, we need not decide which act governs this case.

■ Under ordinary principles of contract law, a term is included in a contract only when the parties assent to that term. *Heywood v. Ziol,* 91 Ariz. 309, 372 P.2d 200 (1962). This mutual assent is based on the objective evidence, not the hidden intent of the parties. *Corbin-Dykes Electric Co. v. Burr,* 18 Ariz.App. 101, 500 P.2d 632 (1972). If, but only if, bailee reasonably believed that bailor's conduct manifested her assent to the terms and conditions of the receipt, a contract including the limitation of liability was formed. *Carter v. Reichlin Furriers,* supra; 1 A. Corbin, Contracts, § 33 at 131 (1963).

■ Bailee relies on older cases which, although applying a contract analysis, hold as a matter of law that acceptance of a storage receipt at the same time the goods are bailed constitutes an assent to the terms and conditions of the receipt. See generally, Annot., 160 A.L.R. 1112 (1946). We reject this inflexible approach because all of the following facts are relevant to determining the reasonableness of bailee's belief:

1. Whether bailee notified bailor of the limitation, *Carter v. Reichlin Furriers,* supra;

2. The conspicuousness of the limitation, *Arkush v. Citron,* 14 Misc.2d 707, 180 N.Y. S.2d 514 (1958); see *Bekins Van Lines Co. v. Hartford Ins. Group,* 27 Ariz.App. 655, 557 P.2d 1087 (1976);

3. The intelligibility of the language of the limitation provision to a lay person, *Arkush v. Citron,* supra; *Rappaport v. Phil Gottlieb-Sattler, Inc.,* 280 App.Div. 424, 114 N.Y.S.2d 221 (1952);

4. Whether bailor signed the storage receipt, *Carter v. Reichlin Furriers,* supra;

5. Whether bailor assented to the $100 valuation, *Rappaport v. Storfer Bros., Inc.,* 207 Misc. 391, 138 N.Y.S.2d 584 (1955);

6. The status of the bailor as business person or lay person, *Carter v. Reichlin Furriers,* supra;

7. The purpose of the limitation, see *Bekins Van Lines Co. v. Hartford Ins. Group,* supra, (limitation required bailor to declare items of extraordinary value).

In this case, bailee did not discuss the valuation with bailor, nor did he notify her of the limitation. He did not ask her to read or sign the receipt, and she did neither. The limitation is inconspicuously placed in the midst of a lengthy paragraph printed in small type. A lay person may not readily understand the import of the limitation provision, which is couched in legalese and which by its terms refers to bailor's representations as to the value of the article stored. Bailor is a lay person, not a business person chargeable with the general knowledge that bailment contracts often contain liability limitations. Bailee arbitrarily limited a known risk, as opposed to sheltering himself from an undisclosed, extraordinary risk. Although the $100 valuation clearly appears on the face of the receipt, this at most created a jury question as to whether bailor's failure to object to, or inquire about, the valuation was so unreasonable as to justify the reasonable belief that bailor thereby agreed to the limitation.

We conclude that under all the circumstances of this case, bailor's conduct did not manifest her assent to the terms and conditions of the receipt. See generally, *Carter v. Reichlin Furriers,* supra. The limitation of bailee's liability for negligent care of the mink, therefore, is unenforceable. Bailee does not question the sufficiency of the evidence that the mink was worth $4,000. That part of the judgment n. o. v. reducing compensatory damages from $4,000 to $100 is reversed.

As for the cross-issue of whether the jury properly awarded punitive damages, although punitive damages do not lie for breach of contract, *Continental National Bank v. Evans,* 107 Ariz. 378, 489 P.2d 15 (1971), they are recoverable where the breach of contract constitutes a tort. D. Dobbs, Remedies, § 12.4 at 818 (1973). To justify an award of punitive damages, the negligence must be aggravated, outrageous, malicious, or wanton. *Hall v. Motorists Ins. Corp.,* 109 Ariz. 334, 509 P.2d 604 (1973). Viewing the evidence most favorably to sustaining the award, *Hurvitz v. Coburn,* supra, we do not find it supports the punitive damage award. That part of the judgment n. o. v. striking the award of $5,000 punitive damages is affirmed.

We remand for entry of judgment consistent with this opinion.

RICHMOND, C. J., and JACK T. ARNOLD, Superior Court Judge, concur.

NOTE: Judge Lawrence Howard having requested that he be relieved from consideration of this matter, Judge Jack T. Arnold was called to sit in his stead and participate in the determination of this decision.