762 P.2d 609

**Max KOEPNICK, Plaintiff–Appellant, Cross–Appellee,**

**v.**

**SEARS ROEBUCK & COMPANY, Defendant–Appellee, Cross–Appellant.**

**No. 1 CA–CIV 9147.**

Court of Appeals of Arizona, Division 1, Department D.

June 16, 1988.

Review Denied Nov. 1, 1988.

William J. Monahan, P.C. by William J. Monahan, Thomas J. Quarelli, Paul G. Ulrich, P.C. by Paul G. Ulrich, Phoenix, for plaintiff-appellant, cross-appellee.

Gust, Rosenfeld, Divelbess & Henderson by Fred Cole, Roger W. Perry, Phoenix, for defendant-appellee, cross-appellant.

## OPINION

FROEB, Presiding Judge.

There are two primary issues raised on appeal and one primary issue raised on cross-appeal. The issues presented on appeal are: (1) whether the trial court erred in granting Sears Roebuck and Company's (Sears) motion for new trial on Max Koepnick's (Koepnick) false arrest claim; and (2) whether the trial court erred in granting Sears' motion for judgment notwithstanding the verdict (judgment n.o.v.) on Koepnick's trespass to chattel claim. The issue raised on cross-appeal is whether the trial court erred in denying Sears' motion for judgment n.o.v. on Koepnick's false arrest claim.

## FACTS

Koepnick was stopped in the Fiesta Mall parking lot by Sears security guards Lessard and Pollack on December 6, 1982, at approximately 6:15 p.m. Lessard and Pollack suspected Koepnick of shoplifting a wrench and therefore detained him for approximately 15 minutes until the Mesa police arrived. Upon arrival of the police, Koepnick and a police officer became involved in an altercation in which Koepnick was injured. The police officer handcuffed Koepnick, placed a call for a backup, and began investigating the shoplifting allegations. Upon investigation it was discovered that Koepnick had receipts for the wrench and for all the Sears merchandise he had been carrying. Additionally, the store clerk who sold the wrench to Koepnick was located. He verified the sale and informed Lessard that he had put the wrench in a small bag, stapled it shut, and then placed that bag into a large bag containing Koepnick's other purchases. The small bag was not among the items in Koepnick's possession in the security room. To determine whether a second wrench was involved, the police and Lessard searched Koepnick's truck which was in the mall

parking lot. No stolen items were found. Having completed their investigation, the police cited Koepnick for disorderly conduct and released him. The entire detention lasted approximately 45 minutes.

Koepnick sued Sears[1] for false arrest, assault, trespass to chattel, invasion of privacy and malicious prosecution. The trial court directed a verdict in favor of Sears on all charges except false arrest and trespass to chattel. After a trial on these claims, a jury awarded Koepnick $25,000 compensatory damages and $500,000 punitive damages for false arrest, and $100 compensatory damages and $25,000 punitive damages for trespass to chattel. Sears timely moved for judgment n.o.v. and alternatively for a new trial. The trial court denied Sears' motion for judgment n.o.v. but granted the motion for new trial on the false arrest claim. The court granted Sears' motion for judgment n.o.v. on the trespass to chattel charge. This appeal and cross-appeal followed.

Koepnick appeals, challenging the trial court's order granting Sears a new trial on his false arrest claim and judgment n.o.v. on his trespass to chattel claim. Sears cross-appeals from the judgment in favor of Koepnick and from the denial of its motion for judgment n.o.v. on Koepnick's false arrest claim.

We find no reversible error and therefore affirm the trial court's order granting a new trial on the false arrest claim and judgment n.o.v. on the trespass to chattel claim.

### FALSE ARREST

A. Koepnick's Appeal

In its order, the trial court stated:

Defendant Sears' motion for new trial on plaintiff's claim for false arrest is granted.

. . . .

In this case, the court erred in submitting the issue of probable cause to the jury. The stop by the Sears security

agents in the parking lot was the start of plaintiff's detention by Sears; therefore, the probable cause to detain the plaintiff must have arisen prior to the time the security guards stopped Mr. Koepnick. There were no issues of fact surrounding Steve Lessard prior to stopping Mr. Koepnick in the parking lot.

As a matter of law, there was probable cause to detain the plaintiff. It was, therefore, error to instruct the jury on reasonable cause. The jury was entitled to determine reasonable time and manner of detention; however, with the erroneous jury instructions, the jury's verdict could have been based upon a finding of the jury of no reasonable cause.

Koepnick argues that the trial court abused its discretion in ruling that reasonable cause (considered the same as "probable cause"; see discussion hereafter) existed as a matter of law because there were issues of fact that were properly submitted to the jury. Koepnick further contends that the order should be reversed because it failed to set forth evidence in support of the finding of reasonable cause and because there were no other errors upon which to justify granting a new trial. Before addressing these issues, we must first consider the parties' contradictory assertions with respect to the applicable standard of review.

1. *Standard of Review*

 An order granting a new trial is subject to a more liberal standard of review than an order denying one. *See, e.g., Melcher v. Melcher,* 137 Ariz. 210, 669 P.2d 987 (App.1983). A reviewing court will not set aside a trial court's grant of new trial absent a clear showing of abuse of discretion. *Adroit Supply Co. v. Electric Mutual Liability Ins. Co.,* 112 Ariz. 385, 389, 542 P.2d 810, 814 (1975). However, the trial court's discretion is legal and not arbitrary and must be exercised according to reason and law. *State v. McMinn,* 88 Ariz. 261, 262, 355 P.2d 900, 901, (1960); *Cano v.*

---

1. Koepnick also included the City of Mesa as a defendant in his lawsuit, but the City of Mesa is not a party to this appeal; therefore, all references to Koepnick's claims against the City of Mesa have been omitted.

**326**

*Neill,* 12 Ariz.App. 562, 567, 473 P.2d 487, 492 (1970).

### 2. *Rule 59(m), Arizona Rules of Civil Procedure*

■ Rule 59(m) provides that "[n]o order granting a new trial shall be made and entered unless the order specifies with particularity the ground or grounds on which the new trial is granted." The purpose of rule 59(m) is to inform the parties and the appellate court of the grounds for the trial court's decision in order to delineate the issues on appeal. *Estabrook v. J.C. Penney Co.,* 105 Ariz. 302, 304, 464 P.2d 325, 327 (1970); *Yoo Thun Lim v. Crespin,* 100 Ariz. 80, 83, 411 P.2d 809, 811 (1966). Where the trial court's order fails to satisfy rule 59(m), the burden shifts to the appellee to convince the appellate court that the trial court did not err in granting a new trial. *Reeves v. Markle,* 119 Ariz. 159, 164, 570 P.2d 1382, 1387 (1978); *State v. Burton,* 20 Ariz.App. 491, 495, 514 P.2d 244, 248 (1973). Koepnick argues that the trial court's order does not satisfy rule 59(m) in that it fails to state in detail how the ground asserted as the basis for granting a new trial operated against the party who lost at trial. Accordingly, Koepnick asserts that Sears has the burden to show that the trial court did not abuse its discretion. We disagree.

■ The above quoted order states that the court was granting a new trial because it believed there were no issues of fact relative to security guard Lessard having reasonable cause to stop Koepnick for suspected shoplifting. The court stated that because there was reasonable cause as a matter of law, it was error to submit that issue to the jury. The court concluded that the only factual issues which should have been submitted to the jury involved whether the detention was conducted in a reasonable manner and for a reasonable time. The court further concluded that the jury's decision against Sears could have been improperly based on a finding of no reasonable cause.

We find this order sufficiently specific to apprise the parties and this court of the

issues on appeal. As this court stated in *Heaton v. Waters,* 8 Ariz.App. 256, 445 P.2d 458 (1968):

> We do not believe that our Supreme Court intends to require the trial judge to render a written opinion setting forth his rationale for granting a new trial motion or to undertake a lengthy review of the facts. Rule 59(m) is designed to serve a practical purpose and should receive a practical construction.

8 Ariz.App. at 259–60, 445 P.2d at 461–62. We find that the order complies with rule 59(m) and there is no shift of the burden of persuasion to Sears.

### 3. *The Merchant's Privilege Under A.R.S. § 13–1805*

■ A.R.S. § 13–1805 grants merchants a privilege to detain suspected shoplifters on their premises under certain circumstances. A merchant may assert the privilege as a defense to a civil suit for false arrest, false or unlawful imprisonment, or wrongful detention. However, the privilege applies only when the merchant can establish that reasonable cause existed to believe the suspect was shoplifting and that the detention was conducted in a reasonable manner for a reasonable time for the purpose of questioning the suspect or summoning a law enforcement officer. *Gortarez v. Smitty's Super Valu, Inc.,* 140 Ariz. 97, 103, 680 P.2d 807, 813 (1984). (The decision also equates the statutory term "reasonable cause" with the term "probable cause." We have used the term "reasonable cause" in this opinion as it is used in A.R.S. § 13–1805.)

■ Reasonable cause is a question of law for the court where the facts or inferences from them are not in dispute. Where there is a dispute, the issue becomes a mixed question of law and fact, and it is for the jury to determine the disputed facts. The trial judge must make the initial determination whether there are disputed facts or conflicting inferences to be drawn from the facts. *Gortarez,* 140 Ariz. at 104, 680 P.2d at 814.

■ The trial court determined that it had erred in submitting the issue of reason-

able cause to the jury because the undisputed facts established reasonable cause. Although this was not the equivalent of directing a verdict on the claim for false arrest, it did take one element of that claim away from the jury. Koepnick argues that this is analogous to a directed verdict and concludes that we must view the evidence in a light most favorable to him. *See, e.g., Rocky Mountain Fire & Cas. Co. v. Biddulph Oldsmobile*, 131 Ariz. 289, 640 P.2d 851 (1982). Relying on *Hibner v. Gleason*, 105 Ariz. 551, 468 P.2d 578 (1970), Sears argues that the trial court's finding that it erred in sending the issue of reasonable cause to the jury was a matter within the trial court's discretion and therefore is subject to an abuse of discretion standard of review.

In *Hibner*, the trial court had granted a new trial on the ground that it had erred by failing to give plaintiff's requested instruction on last clear chance. On appeal, the defendant argued that only an error of law was involved and therefore the abuse of discretion standard of review for an order granting new trial should not apply. In rejecting this argument, the court stated:

> it is here that the discretion of the trial court comes into play. The rule is that the evidence must be construed in a light most favorable to the party requesting the instruction on last clear chance. [Citations omitted.] The *burden is upon the defendant here to show an abuse of discretion in the granting of a new trial.* [Citations omitted.]

. . . . .

*Hibner*, 105 Ariz. at 552, 468 P.2d at 579 (emphasis added). *Hibner* acknowledges that the trial court was bound by the usual rule with respect to giving requested jury instructions, i.e., that the evidence must be construed in a light most favorable to the party requesting the instruction. The court then assumed the applicability of that rule in determining whether the trial court abused its discretion in finding that the facts, when viewed most favorably to the plaintiff, entitled him to the instruction and warranted a new trial.

In *Gortarez* the supreme court reviewed a trial court order directing a verdict in favor of the defendant merchant on the issue of false imprisonment and false arrest. The court stated that it viewed the facts in a light most favorable to the party against whom the verdict was directed. However, in referring to the trial court's finding that there were no disputed facts relative to reasonable cause, the supreme court stated:

> Although the question of reasonable cause in the instant case may have been close we defer to the trial court's better opportunity to see and judge the credibility of witnesses and uphold it on the specific finding that conflicting inferences could not be drawn from the facts and that reasonable cause existed as a matter of law. (Footnote omitted.)

*Gortarez*, 140 Ariz. at 104, 680 P.2d at 814.

Thus, we also review the trial court's order granting a new trial under the abuse of discretion standard generally applicable to such orders. We recognize that the trial court was required to view the evidence in a light most favorable to Koepnick when taking the issue of reasonable cause from the jury. However, we also recognize, on the basis of *Gortarez*, that great deference must be accorded the trial court's implicit finding that conflicting inferences relative to reasonable cause could not be drawn from the facts.

4. *Did the Trial Court Abuse Its Discretion in Granting a New Trial to Sears?*

The trial judge instructed the jury on the issue of reasonable cause as follows:

> If you find that the following events occurred, then reasonable cause is established as a matter of law:
>
> 1. Steve Lessard talked with all sales persons on the floor in the hardware department at the time Steve Lessard was on the floor in the hardware department.
> 2. None of the employees questioned by Steve Lessard had sold the plaintiff the wrench in question.

3. Steve Lessard talked with Bruce Rosenhan, the sales clerk, who advised Steve Lessard he believed a shoplift had occured.

4. Dave Pollack saw no receipts when he passed by the plaintiff's bag at the cash/wrap and he conveyed no information regarding receipts to Steve Lessard.

5. Steve Lessard approached the plaintiff in the Sears' parking lot area and identified himself as a Sears security agent to the plaintiff.

6. The plaintiff was asked for the receipt for the wrench while the plaintiff and the security guards were in the parking lot.

7. The plaintiff was given an opportunity to produce a receipt for the wrench while in the parking lot.

8. The plaintiff produced no receipt for the wrench to the security agent while in the parking lot.

This instruction implies that all eight findings must be made to establish reasonable cause. In granting the motion for new trial the trial court found that when Sears security agents stopped Koepnick in the parking lot, this was the start of his detention. Therefore, reasonable cause had to arise prior to that stop. The court further stated that "there were no issues of fact surrounding Steve Lessard prior to stopping Mr. Koepnick in the parking lot." Thus, the court concluded that there were undisputed facts establishing the first four issues listed in the instruction.

Koepnick agrees that the evidence was undisputed as to these four facts. However, he argues that there were disputed issues of fact concerning the thoroughness of the investigation by Sears prior to the stop and that failure to investigate is relevant to reasonable cause. *See Gortarez,* 140 Ariz. at 104, fn. 5, 680 P.2d at 814, fn. 5, and cases cited therein. Koepnick argues that Lessard had 20 to 25 minutes to investigate during which time he could have: pulled the cash register tape to determine whether a wrench had been sold; inquired whether any employees who might have sold the wrench to Koepnick were on a break; checked handwritten receipts under the counter to see if there was a receipt for the wrench; and looked at the receipts allegedly stapled to the outside of Koepnick's shopping bag.

Despite Koepnick's objections, the trial court refused to allow the issues of the thoroughness of the investigation to go to the jury. Koepnick has waived this alleged error for purposes of appeal as harmless in light of the verdict. However, he asserts that the existence of these issues establishes that the trial court erred in finding reasonable cause as a matter of law.

The facts regarding the thoroughness of the investigation are not in dispute. It was undisputed that neither Steve Lessard nor Dave Pollack, the two security guards involved in Koepnick's detention, made the investigations which Koepnick alleges they should have made. Whether Sears' investigation was insufficient to establish reasonable cause given these facts was properly a decision for the trial court.

■ In addition to having undisputed facts concerning the measures Lessard and Pollack took or failed to take in 20 to 25 minutes, the trial court also considered the following undisputed facts: Lessard had been called by a sales clerk who believed Koepnick had shoplifted a wrench; he had spoken to all sales persons on the floor of the hardware department and determined that none of them had sold a wrench to Koepnick; his assistant and some sales clerks had seen the wrench in Koepnick's shopping bag; and Koepnick left the store with the wrench. Given these facts, we cannot say that the trial court abused its discretion by finding that Lessard had reasonable cause to detain Koepnick.

Koepnick also argues that the trial court erred in speculating that the jury verdict could have been based on finding an absence of reasonable cause. Relying on *Elliott v. Landon,* 89 Ariz. 355, 362 P.2d 733 (1961), Koepnick argues that since the issues of reasonableness of the detention as to time and manner properly went to the jury, it should be presumed that the verdict was based on these grounds. *Elliott* does not support Koepnick's position in this

case. In *Elliott*, the appellant argued that the jury might have based its verdict on the trial court's failure to give an instruction that there was no issue as to injury and that the jury might have found for the defendant on the ground that there was no injury. The supreme court first concluded that there was no error in failing to give the requested instruction. It then stated that the jury was correctly instructed and it must be presumed that the jurors acted in accordance with those instructions. Further, the court stated that "in considering an appeal from a judgment based upon a general verdict it must be assumed that the jury passed upon every material issue of fact presented to them, and that the findings thereon were such as to support the verdict." *Elliott*, 89 Ariz. at 357, 362 P.2d at 735. Unlike the instruction in *Elliott*, the jury instruction in this case was erroneous. *Elliott* does not stand for the proposition that where an erroneous instruction has been given, an appellate court can presume that it was ignored and that the jury verdict is based only on the proper instructions.

Sears also argues that the trial court erred in instructing the jury and that these errors warrant a new trial. Koepnick asserts that these issues are not properly before this court because they are not listed as part of Sears' cross-appeal or as cross-issues in Sears' answering brief. We disagree. Sears has properly encompassed these issues in its notices of appeal. Therefore, we have jurisdiction to consider them.

Sears has set forth the alleged errors in the jury instructions as part of its argument that it should have been granted judgment n.o.v. on the false arrest claim. Within this argument, Sears alternatively contends that these errors would support a new trial. We are not persuaded that the failure to expressly identify this as a cross-issue would preclude us from considering this argument. However, we do not find it necessary to make this determination because the order can be upheld for the reasons stated in the order itself.

**B. Sears' Cross–Appeal**

Sears contends that the trial court erred in denying its motion for judgment n.o.v. on Koepnick's false arrest claim and in denying its motion for judgment n.o.v. on the punitive damage claims.

Both parties agree that the standard of review for determining the appropriateness of granting a judgment n.o.v. is whether the evidence is sufficient that reasonable people could discern facts to support the verdict. *Rancho Pescado, Inc. v. Northwestern Mut. Life Ins. Co.*, 140 Ariz. 174, 183, 680 P.2d 1235, 1244 (App. 1984). In reviewing a judgment n.o.v., the appellate court views the evidence most favorably to sustaining the verdict. *Lerner v. Brettschnieder*, 123 Ariz. 152, 153, 598 P.2d 515, 516 (App.1979).

We have already decided that the trial court correctly removed the issue of reasonable cause from the jury. Therefore, we next consider Sears' argument that there were also no disputed facts concerning the other elements of its A.R.S. § 13–1805 defense, i.e., proper purpose for the detention, and reasonableness of time and manner of the detention.

Sears contends that it is undisputed that its purpose in detaining Koepnick was to summon a law enforcement officer, a purpose properly permitted under A.R.S. § 13–1805(C). Sears further argues that it is undisputed that it detained Koepnick not more than 15 minutes prior to the arrival of the police. Sears emphasizes that from this point on, *Koepnick was in the custody of the Mesa police, not Sears.* Finally, Sears contends that there were no issues as to the reasonableness of the manner in which Sears' personnel detained Koepnick after they stopped him in the parking lot.

Having reasonable cause to suspect Koepnick of shoplifting, Sears was entitled to detain him either (1) to question him or (2) to summon the police. A.R.S. § 13–1805(C). The record is replete with contradictory statements concerning what questioning, if any, occurred during the security guards' contact with Koepnick in the parking lot. Thus, the statutory purpose of "questioning the subject" was ad-

mittedly not established with such certainty that it would have justified a directed verdict. However, it is undisputed that Sears' personnel immediately contacted the Mesa Police after Koepnick was taken to the security room. Thus, the statutory purpose of summoning a law enforcement officer was established and our inquiry turns to the issues of the reasonableness of the time and manner of detention.

Koepnick concedes that the length of his detention prior to the arrival of the police and until Sears' employees and Mesa police officers had completed their investigation was reasonable. However, he contends that he should *then* have been released immediately, rather than being detained for an additional 15 to 20 minutes so that his truck could be searched. Koepnick concedes that technically he was in the police officer's custody during that time. He maintains, however, that there was evidence that the additional period of detention would not have occurred but for a request from Lessard, a Sears employee.

■ As to this point, we hold that Sears is not legally responsible for the time Koepnick was detained after he was arrested for disorderly conduct by the Mesa police. Even assuming that Lessard suggested further investigation, the decision to place Koepnick under arrest and continue his detention was solely within the discretion of the police. Sears cannot be subjected to liability for the continued detention even if its employee had encouraged it.

In so holding, we reject Koepnick's argument that Lessard's encouragement of further investigation once he was arrested is the same as if Sears had wrongly instigated an unlawful arrest to begin with. Section 45A, *Restatement (Second) of Torts*, provides, "[o]ne who instigates or participates in the unlawful confinement of another is subject to liability to the other for false imprisonment." Cases discussing the law in this area point out, however, that liability for "instigation" is not imposed where the police act on their own judgment and discretion. *Deadman v. Valley Nat'l Bank*, 154 Ariz. 452, 743 P.2d 961 (App. 1987); *White v. Standard Oil Co.*, 16 Ohio

App.3d 21, 474 N.E.2d 366 (1984); *Conn v. Paul Harris Stores, Inc.*, 439 N.E.2d 195 (Ind.Ct.App.1982); and *El Dorado Hotel, Inc. v. Brown*, 100 Nev. 622, 691 P.2d 436, 445 (1984) (dissenting opinion). *See also Coates v. J.J. Newberry & Co.*, 96 N.J.Super. 9, 232 A.2d 425 (1967). Here, the continued detention of Koepnick was the sole responsibility of the Mesa police. Once lawfully in police custody, the opinions, requests, or suggestions of others do not render them liable for continued detention. We hold, therefore, that there is no disputed issue concerning the length of time of Koepnick's detention.

■ Finally, we turn to the manner of detention. We believe there is some evidence from which a jury could reasonably have found that Sears' security guards did not handle the detention in a reasonable manner. Koepnick testified that he was stopped in an unlit area of the parking lot by two young men whom he believed were trying to hustle him. He further testified that one of Sears' employees stepped in front of him to block his forward progress while another employee grabbed his package away from him, took a wrench from the bag and waved it at him. Finally, Koepnick testified that he was pushed around and denied the opportunity to use a telephone or get a drink of water. Therefore, we hold that the trial court did not err in denying Sears' motion for a directed verdict on Koepnick's claim for false arrest.

As we have upheld the trial court's order granting a new trial, it is unnecessary for us to address Sears' arguments concerning the punitive damages claims.

## TRESPASS TO CHATTEL

■ Arizona courts follow the *Restatement (Second) of Torts* absent authority to the contrary. *Fendler v. Phoenix Newspapers, Inc.*, 130 Ariz. 475, 636 P.2d 1257 (App.1981). The *Restatement* provides that the tort of trespass to a chattel may be committed by intentionally dispossessing another of the chattel or using or intermeddling with a chattel in the posses-

sion of another. *Restatement (Second) of Torts* § 217 (1965).

The *Restatement (Second) of Torts* §· 221 (1965) defines dispossession as follows:

> A dispossession may be committed by intentionally
>
> > (a) taking a chattel from the possession of another without the other's consent, or
> >
> > . . . .
> >
> > (c) barring the possessor's access to a chattel. . . .

Comment b to § 221 provides that dispossession may occur when someone intentionally assumes physical control over the chattel and deals with the chattel in a way which will be destructive of the possessory interest of the other person. Comment b further provides that "on the other hand, an intermeddling with the chattel is not a dispossession unless the actor intends to exercise a dominion and control over it inconsistent with a possession in any other person other than himself."

The *Restatement (Second) of Torts* § 218 (1965) provides:

> One who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if,
>
> > (a) he dispossesses the other of the chattel, or
> >
> > (b) the chattel is impaired as to its condition, quality, or value, or
> >
> > (c) the possessor is deprived of the use of the chattel for a substantial time, or
> >
> > (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest.

 Koepnick argued at trial that Lessard's participation in searching his truck constituted an actionable trespass to the truck. He was awarded $100 damages by the jury which he characterizes as damages for a dispossession pursuant to subsection (a) or deprivation of use pursuant to subsection (c) of § 218.

The *Restatement* recognizes that an award of nominal damages may be made, even in the absence of proof of actual damages, if a trespass to chattel involves a dispossession. *See* § 218, comment d. However, both parties have agreed that the $100 compensatory award is not nominal.

Sears' actions with respect to the trespass consisted of Steve Lessard accompanying a Mesa police officer out to the parking lot and looking in the truck. There is no evidence in the record of an intent on the part of Sears' employee to claim a possessory interest in the truck contrary to Koepnick's interest. No lien or ownership interest claim of any kind was made. Further, there is no evidence that Sears intentionally denied Koepnick access to his truck.

Koepnick was in the City of Mesa's custody at the time of the search and Sears had no control over how the police department conducted its investigation or the disposition of Koepnick during that investigation. There is no evidence that Sears' employees objected to any request by Koepnick to accompany them down to the vehicle.

Comment e to the *Restatement* § 218 discusses the requirement of proof of actual damage for an actionable trespass to chattel claim.

> The interest of a possessor of chattel in its inviolability, unlike the similar interest of a possessor of land, is not given legal protection by an action for nominal damages for harmless intermeddlings with the chattel. In order that an actor who interferes with another's chattel may be liable, his conduct must affect some other and more important interest of the possessor. Therefore, one who intentionally intermeddles with another's chattel is subject to liability only if his intermeddling is harmful to the possessor's materially valuable interest in the physical condition, quality, or value of the chattel, or if the possessor is deprived of the use of the chattel for a substantial time, or some other legally protected interest of the possessor is affected as stated in Clause (c). Sufficient legal protection of the possessor's interest in the mere inviolability of his chattel

332

is afforded by his privilege to use reasonable force to protect his possession against even harmless interference.

The search in question took approximately two minutes. Neither the truck nor its contents were damaged in any manner by the police or Sears' employee. As a matter of law, Sears' action did not constitute an actionable trespass under § 218(c).

In arguing that Sears should not have been given a directed verdict in its favor on the trespass to chattel claim, Koepnick asserts that the search of his truck caused him to remain in custody longer than he would otherwise have been detained. While this may be true, there was no evidence showing any connection between $100 and the few minutes that Koepnick was detained as a result of waiting for that search to be completed—apparently 15 minutes. For a deprivation of use caused by a trespass to chattel to be actionable, the time must be so substantial that it is possible to estimate the loss that is caused. The record in the present case lacks any evidence to permit a jury to estimate any loss caused to Koepnick. It is well settled that conjecture and speculation cannot provide the basis for an award of damages. The evidence must make an approximately accurate estimate possible. *Rancho Pescado*, 140 Ariz. at 186, 680 P.2d at 1247; *Nelson v. Cail*, 120 Ariz. 64, 68, 583 P.2d 1384, 1388 (App.1978).

Even if a verdict on the claim of trespass could be affirmed on the basis that a dispossession occurred, the award on the verdict would necessarily be limited to nominal damages. As discussed above, both parties agree that the $100 award was not nominal. Furthermore, punitive damages were erroneously awarded because punitive damages cannot be awarded absent evidence of actual damages. *Gomez v. Dykes*, 89 Ariz. 171, 359 P.2d 760 (1961); *Quinonez v. Andersen*, 144 Ariz. 193, 696 P.2d 1342 (App.1984).

We conclude that there was no dispossession of the vehicle as contemplated under § 218 of the *Restatement* nor was Koepnick deprived of its use for a substantial period of time. Any increase in the length of detention caused by the search is not the kind of interest protected by the tort of trespass to chattel. Accordingly, we affirm the trial court's directed verdict in favor of Sears on this issue.

The judgment of the trial court is affirmed and this matter is remanded to the trial court for proceedings in accordance with this opinion.

CONTRERAS, J., and MATHESON, J. Pro Tem., concur.

NOTE: Alan A. Matheson was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. Art. VI, § 3 and A.R. S. §§ 12–145 to –147.